M. G. MARKHAM v. JOHN W. MARKHAM.

*Action, form of—Contract—Evidence.*

Plaintiff contracted with defendant to serve him as clerk from the 1st of January, 1891, to 1st of January, 1892, at the rate of forty-five dollars per month, payable monthly; the plaintiff was paid up to the 1st of June, but on the following day defendant asked him to surrender the keys of the store, which was done, and plaintiff left; on the 6th of July following, he brought suit before a magistrate for the amount of the stipulated wages for the month of June: *Held—*

1. The plaintiff was entitled to recover irrespective of whether the form of action was upon contract or for damages for wrongful dismissal.

2. That plaintiff might have postponed his action till the end of the year and recovered the aggregate sum of annual wages, to be lessened by any amounts paid thereon, and all amounts he might have received from other employment he should have obtained in the meantime.

3. That it was not error to submit to the jury the question whether the conduct of defendant in demanding the surrender of the keys was a dismissal.

This was a CIVIL ACTION, tried on appeal from a Justice of the Peace, before *Winston, J.,* at October Term, 1891, of the Superior Court of DURHAM County.

The plaintiff testified: " I was in the employ of the defendant from January 1, 1891, to June 2, 1891. The contract between us was that I was to work for him from January 1,

1891, to January 1, 1892, at the rate of $45 per month, or as I needed the money. Nothing was said about how I was to be paid. I was working by the year. I began work on January 1, 1891; had been working for defendant as clerk for several years, and had been carrying the key. I quit on the night of June 2d; did not return to work on the morning of June 3d. On the night of June 2d, at the time for closing the store, defendant called me and said he would have to ask me to give up the key. I handed him the key, and said I did not care to work for a man who let his wife rule him. I said this after defendant demanded the key. The defendant made no reply; this was all the conversation. I had been paid up to June 1st. The defendant tendered me the money for two days' work in June, at the rate of $45 per month. During the month of June I sought employment and could not get any. I made $6 in that month." The defendant said he was sorry for the disturbance between plaintiff's wife and defendant's wife. This was all the evidence.

Defendant demurred to the evidence upon the ground that the evidence was insufficient to prove a discharge of plaintiff by defendant, because, as the contract of hiring was by the year, with no agreement as to how the plaintiff should be paid, and the year not having expired, the plaintiff could not recover, his action being premature.

His Honor overruled the demurrer. Defendant excepted.

The defendant then asked his Honor to charge the jury that plaintiff could not recover upon his own evidence for the reason stated above. His Honor declined to give the instruction. Defendant excepted.

His Honor charged the jury:

"If the hiring was by the year, to be paid $45 a month, and the defendant dismissed plaintiff without legal excuse, the plaintiff will recover for June, 1891, less what he could and did make, $6."

Defendant excepted.

His Honor charged the jury, if the hiring was by the year to be paid monthly, and the plaintiff left of his own accord, he could not recover anything.

There was a verdict and judgment for plaintiff, and defendant appealed.

*Mr. W. W. Fuller,* for plaintiff.
*Mr. J. S. Manning,* for defendant.

AVERY, J.: If the agreement was that the plaintiff should sell goods as a clerk for a year with a fixed compensation of forty-five dollars per month, the defendant could not discharge him during the year for insufficient reasons, and refuse to let him perform further service without incurring liability for the loss sustained by the plaintiff by reason of such wrongful act. *Chamblee* v. *Baker,* 95 N. C., 102.

It seems that this liability would be incurred where there is legal cause on the part of the employee for quitting the service and abandoning the performance of the contract, whether the parties had agreed to pay a gross sum at the end of the year or in installments at the end of every month. *Booth* v. *Ratcliffe,* 107 N. C , 6; *Chamblee* v. *Baker, supra.*

In the absence of such an agreement between the parties as definitely determines the price fixed by them upon the services rendered, the employee may sue immediately upon his wrongful discharge, and recover for the portion of the work actually performed before that time, as upon a *quantum meruit.* Bishop on Contracts, § 838; 2 Parsons on Contracts, pp. 522, 523, 658, 659, and note (*i*); *Booth* v. *Ratcliffe, supra; Kendall* v. *Commissioners,* 79 Va , 563; *Lunatic Asylum* v. *Flannagan,* 80 Va , 116.

But in our case the plaintiff was paid up to the first day of June, and claims that he was discharged from defendant's service without legal cause on the night of June 2d. He

sued before the end of the year to recover his wages at the contract price of forty-five dollars per month. He might have waited till the end of the year and brought his action then for his wages at the same rate for seven months; but the defendant could have shown, in diminution of damages, that the plaintiff on the first day of July, and thereafter to the end of the year, engaged in other lucrative employment, for which he was paid as much compensation as he would have been entitled to receive under the contract sued on, and this would have prevented recovery for any portion of the year except the month of June, because payment for that month would have placed him in the same condition as if the defendant had accepted and paid for his services for the entire year at the stipulated price. *Hendrickson* v. *Anderson*, 5 Jones, 246. But if the defendant wrongfully violated "his part of the contract," there can be no question about the right of the plaintiff to have brought the action immediately upon the breach, on the third day of June, for the work he had actually performed, subject to be diminished by the amount already received, though he had been paid up to two days before. *Brinkley* v. *Swicegood*, 65 N. C., 626. The plaintiff did not proceed or rely upon either of the theories mentioned. We assume, as it is legitimate for us to do, that he was employed in some other business about the first of July that promised to yield as much remuneration as the defendant had contracted to pay for the residue of the year. If such was the case, the plaintiff would have been put "in the same condition" as if the defendant had complied with the contract between them on receiving from the latter forty-five dollars less six dollars, the amount actually earned after his discharge during the month of June. The injured party, according to the dictates of reason, said the Court in *Hendrickson* v. *Anderson, supra,* "ought to be put into the same condition as if the contract had been fully performed on both sides." This equitable principle is the test

to be applied. The plaintiff claimed exactly what the law declared him entitled to receive, wages at the stipulated rate for the time when he failed to receive either from the defendant or any other person as much as forty-five dollars per month. The Court told the jury that if wrongfully discharged, he was entitled to recover the stipulated monthly price less the sum shown to have been actually earned by him, viz., six dollars. The suit was brought before a Justice of the Peace on the 6th of July. The plaintiff might have brought it at the same date in the Superior Court, claiming a much larger sum and suffering it to be diminished by proof of the amount already paid, or he might have waited till after the 31st of December and brought the action for wages for the whole year, and had his claim for damages diminished by deducting both the payments by defendant and the amount of wages received from other sources to the net sum of thirty-nine dollars. 14 Am. & Eng. Enc., pp. 793, 794. The value of his services was fixed by agreement of the parties, not at a gross sum per year, but at forty-five dollars per month. Actions were brought under the former practice upon a *quantum meruit*, in the absence of an express agreement, because the law implied a promise on the part of the person benefited to pay for services rendered at his request or instance. Our case is not like those where parties agree upon a gross sum to be paid for building a house, or for labor for a year where there is no agreement as to the apportionment if it is only partly performed. In such a case work or services might for some reason be more valuable one month than another, but under the contract in this case the amount which the plaintiff might have claimed at the end of the year could have been ascertained only by multiplying the rate determined by the parties to be the value of the service for a month by the number of months. The plaintiff in the summons (no formal complaint or answer being filed) complained for the "non-payment of the

sum of forty-five dollars, with interest on forty-five dollars from July 1st, 1891, until paid, *due by contract."* He chose to ask judgment for the net sum, ascertained by deducting both the payments already made by defendant and his subsequent earnings derived from other sources from the gross amount of wages for twelve months at forty-five dollars per month. The forms of actions are abolished, and all suits brought for the redress of private wrongs are now comprehended under the generic term, civil action. Constitution, Art. 4, § 1. The claim is for forty-five dollars, due by contract. When, upon every legal view of the case, the sum actually due him, if he was wrongfully discharged, is the amount claimed, less what he earned during the month of July, to send him out of Court because he did not, in strict conformity to an obsolete rule of pleading, adopt the "form of action" known as *assumpsit,* and sue as on a *quantum meruit,* instead of using another form to enforce a promise which the law implied, would be to tack the new cloth to the old garment. Instead of all this stickling for forms, the plaintiff says, in effect, "The defendant owes me forty-five dollars, due by contract." He does not deem it necessary to say whether it arose out of an express or an implied contract; but the defence set up orally by the defendant would seem to concede that there had been a contract which fixed the former's wages definitely, as he "denied the allegations of the complaint, but said that upon a settlement of the account between plaintiff and defendant he owed plaintiff $1.44." The jury found that the balance due was the sum demanded, less the earnings of plaintiff for the month of June. If the plaintiff brought his action for damage and laid his damages at forty-five dollars, the theory of the law would still be that he would recover on an implied contract, and the damage would be " due by contract," as alleged. The measure of damages must of necessity depend upon the value of the services which had been agreed upon.

In the face of the manifest purpose of the framers of the Constitution, that meritorious actions should not be defeated or delayed by mere technical objections to form not founded on substantial reason, we cannot hold that the plaintiff's declaration should have been made in a particular way, or possibly in such form as would have necessitated his seeking another jurisdiction to institute his action. If the suit is treated as one brought to recover such damage, as it may be, caused by the wrongful dismissal, the plaintiff has a right to recover, as a part of the damages, his salary *pro tanto* (2 Wharton on Contract, § 716), and this is all that he claims, and all that the Court declared him entitled to receive. The rate agreed upon by the parties as the value of a month's services, must, of necessity, guide the jury in assessing the damage, whether for a month of labor performed under the contract for his employer, or for a month when he was out of employment on account of the wrongful dismissal and earned nothing. The plaintiff had a right, too, to treat the contract as existing and sue at the end of the month. 14 Am. & Eng. Enc., 798 (3). The defendant did not ask for more specific information, nor did he demur, but contented himself with a general denial and a special averment, that after full settlement the balance was one dollar and forty-four cents, instead of forty-five dollars. We think that the instruction with regard to damage was correct, for the reasons given. But the Court charged the jury further, as follows: "What did the defendant mean by asking plaintiff to give up the keys? Did he mean to dismiss the plaintiff? If the plaintiff said, 'I will not live with a man ruled by his wife,' and this was after he had been told by defendant to give up the keys, and by this the jury find that the defendant had discharged the plaintiff already, it will not affect the claim of the plaintiff; but if it was said first, and plaintiff thereby meant that he would leave, and did leave, he cannot recover."

Defendant excepted, and assigned such instruction as error.

It is insisted that the Judge erred in leaving this matter to the jury as he did, because the question whether plaintiff was discharged was not one for them generally, and especially that the language of the plaintiff showed that he left of his own volition, and not because he was discharged by the defendant.

Where the owner of a store where merchandise is kept asks the clerk for the key, the request may mean that the former wishes to take it temporarily, or that he intends no longer to trust the latter with its custody. The defendant called the plaintiff, at the time for closing the store, and said "that he would have to ask him to give up the key." The reply of the plaintiff evidently indicated that he understood his employer to mean that he was driven to make this request by reason of the unpleasant relations of the two families, and if he had to make the request or was impelled to it by an influence of any kind, he meant to discharge the clerk, and the plaintiff smarting under the demand and understanding what influence was operating, said he did not care to work for a man who was ruled by his wife. The plaintiff stated expressly that he had repeated the substance of all the conversation between them. When the plaintiff interpreted the request to mean a discharge, the defendant did not deny it, nor did he deny that he had taken the step on account of disagreement between the families. It was not improper to leave the jury to draw the inferences from what was said as well as from the failure of the defendant to say more. If the jury found that the parties mutually understood that the defendant meant, as the plaintiff interpreted his equivocal language "I am compelled, on account of trouble between our families, to take my business out of your hands and ask you with that view to surrender the key," the fact that the latter said in effect "I do not regret that you have discharged me because I do not care to work

for a man who lets his wife rule him," would not make the language and previous conduct of defendant amount to less nor more than a dismissal. No set form of words was necessary to express the desire to discharge him.   14 Am. & Eng. Enc., 792, 5, and note 4.   The law did not compel him to explain to his employer that but for the unfortunate relations he would have been able and willing to serve him. 14 Am. & Eng. Enc., 792.   The defendant did not demur, nor did he suggest by way of defence that the plaintiff had not averred his readiness to perform the service according to his original contract.   The plaintiff is, therefore, deemed to have alleged *ore tenus* all that was essential.   The jury might well have inferred from the testimony, if the point had been raised, that plaintiff was able to perform his contract.   This specific objection does not seem to have been made either in a bill of exceptions or on a motion for a new trial; and, if it were tenable, has not therefore been assigned as error.   *McKinnon* v. *Morrison*, 104 N. C., 354.

Affirmed.