CARTER v. CAPE FEAR LUMBER CO.

(Filed November 5, 1901.)

NEGLIGENCE—*Master and Servant—Defective Appliances—Ordinary Care—Reasonable Care.*

Slight defects in appliances causing injuries which can not be reasonably anticipated, do not render the owner of the machinery liable.

ACTION by Charles Carter against the Cape Fear Lumber Company, heard by Judge *W. A. Hoke* and a jury, at April Term, 1901, of the Superior Court of NEW HANOVER County. From a judgment for the plaintiff, the defendant appealed.

*Bellamy & Peschau,* for the plaintiff.
*Iredell Meares,* for the defendant.

MONTGOMERY, J.   The plaintiff was injured while employed by the defendant, in the receiving of lumber from a slide and placing the lumber upon a truck for transfer to a car and thence to a dry-kiln.   The slide was at an angle of about 33 degrees and about six feet in width.   There was a platform at the base of the slide about fifteen inches wide, according to the testimony of the plaintiff.   At each outer edge of the platform there was a "bumper" (a square piece of timber) protruding above the platform for the purpose of stopping and holding in position the pieces of plank, raised singly to the top of the slide by automatic machinery, as they descended on the slide to the platform.   These bumpers were fastened and held by iron clamps or bands, bolted to the beams.   Alongside of the platform and touching it, according to the testimony of the plaintiff, a truck was placed to receive the planks, and which, when loaded, was moved laterally on an inclined track to another track, and from that other track placed on a car and carried thence to the dry-kiln. On the other side of the truck, in its first position, were placed two upright standards to hold in place the loaded truck and keep it from rolling off.   These standards rested on a platform on a level with the truck, and in front of them was an inch scantling nailed to the platform, which acted as a check or mortise to hold the standards at the bottom.   The tops of the standards were placed in a mortice in a board nailed to the top of the frame.   To prevent the loaded truck from

moving when the standards were removed, "chocks" (wooden blocks) of the right shape and dimensions were furnished by the defendant to be  placed underneath the wheels, and they were used at the time of the plaintiff's injury.   These "chocks" were removed by hand, an employee standing or stooping at each end of the truck for that purpose after the standards have been removed, in order that the loaded truck may roll to the transfer track.   .

The plaintiff, in his complaint, alleges negligence on the part of the defendant, first, in that the "defendant recklessly, negligently and wantonly permitted lumber to be thrown down the slide against a bumper, which was insecurely and negligently and defectively erected, and by the force and weight of the lumber, in its fall striking against the said defective bumper, caused a car, placed in its regular and customary position—which, on account of the defective condition and construction of the bumper, rested against the bumper— to turn over and throw the load of lumber and car on the body of the plaintiff, crushing him beneath its weight and breaking both legs of the plaintiff, the left leg in two places and the right leg near the thigh, inflicting serious, permanent and bodily injury to the plaintiff, and causing him great suffering and pain, prostrating and confining him to a hospital for a period of nearly six months, and seriously affecting his nervous system."   And second, "That the defendant company was further negligent in not providing proper and sufficient appliances to prevent the said car from moving and turning over when struck, as hereinbefore alleged, whereby the plaintiff suffered the injury complained of."

The alleged negligence in the construction of the frame or stall may be eliminated from the case, for although the plaintiff said that the frame was insecure, yet he also said that if he had not pulled the standard out of the bottom it would not have broken.   The injury, then, did not result from

want of strength or security in the frame or stall. It is true that the plaintiff testified that at other places there was in use a method of fixing standards securely, but, as we have said, the insecurity of the standard was not the cause of the injury to the plaintiff. The standards had been removed by the plaintiff, and, as he says, if they had not been pulled up at the bottom, they would not have been broken. And also, the plaintiff further said that at the Angola Lumber Company's mill at Wilmington, there was a latch that held the car until the laborers could get away to a secure place. But that testimony was in reference to the use of a latch to hold the truck instead of holding it by the method of "chocks," and not the security or insecurity of the method of holding the car by standards and frame. There was no evidence on the part of the plaintiff that the plan of holding the trucks by "chocks" was not safe and secure.

The real matter for consideration, then, is the alleged negligence of the defendant in reference to the construction of the bumpers at the time of the plaintiff's injury and about that matter was made the main argument of the plaintiff's counsel in this Court. The plaintiff testified that "the lumber that came down the slide came in the usual way, and in the same way as it had been coming ever since I had been working there. The platforms were in good condition. The frame-work was substantial. The trucks upon which the lumber is loaded is made of iron. They did not break. The iron tracks did not give way, there was nothing the matter with the slides or stalls, except the bumper was loose. It is an iron collar or band around the top of the bumper that is fastened to the beams on the slide or platform. The iron collar did not break or wrench out. The bumper had a loose play within the collar." A safe place in which to work had been furnished to plaintiff, and every appliance that was necessary to conduct the operations of the mill was furnished,

and all in good condition except that under the iron collar of one of the bumpers there was a play of half an inch, caused by the wearing of the timber, and not by decay or rot. The plaintiff did not know at the time of his injury of the loose collar around the bumper, but he saw it several months thereafter when he was at the mill, and it had not been changed, but a witness for the plaintiff said that the collar had a play of half an inch on the day of the injury. The plaintiff gave the following description of the manner in which he was hurt: "We have to lift the standard above the chocks below about one and one-fourth inch out of the groove, and then pulling the bottom ends out, lower them until the top end slips out of the mortice above. We have to take out the standards before moving the loaded trucks of lumber out of the frame. I had taken out one standard. I was raising the last standard. Just as I did so, and while in a stooping position lifting it up, a plank of lumber 16 feet long and one inch thick came down the slide by automatic machinery and struck the bumper on the side of the truck opposite to me. The plank struck the bumper and jarred the car, and the car and the lumber came right over on me. The standard which I was raising broke out of the mortice above, in which it was fastened. I could not stop the car. The bumper was loose. It had a play of one-half inch or more. The loaded trucks were tight in between the standards and the bumper." At the conclusion of the plaintiff's evidence, the defendant made a motion to dismiss as of nonsuit, and, upon the same having been overruled, introduced evidence. Upon the close of the evidence on both sides, the defendant renewed its motion to dismiss the action—a proceeding which amounts to a demurrer to the evidence under the old system of pleading. *Means v. R. Co.,* 126 N. C., 424. There was nothing in the evidence offered by the defendant helpful to the plaintiff; in fact, a number of the witnesses testified that the lumber-plant was

in excellent condition, that there was no worn place under the collar around the bumper, that there was plenty of room between the standards and the bumper; and two of them said that the plaintiff told them at the time of the accident that the chocks must not have been under the wheels of the truck. But with the defendant's evidence we are not concerned (no part of it being of aid to the plaintiff), being confined, under the motion to dismiss, to the plaintiff's evidence, and that, too, in the light most favorable to him. According to his evidence, then, at the time of the accident this was the situation: "Chocks of right size and shape were under the wheels of the truck, the platforms, tracks, trucks and cars were in good condition, and the planks were descending on the slide in the usual way; but the truck was close in between the bumpers and the standards, and there was a play of half an inch underneath the band or collar around the bumper. The plaintiff was hurt by the falling of a plank 16 feet long, a foot wide, and an inch thick, and striking the bumpers with such force as to cause the bumpers to work in the loose place under the collar, and by sudden impact upon the track to start it in motion, and in its course to harm the plaintiff. To be more specific still: The bumpers and the standards, and the half-inch play under the band around the bumper, constitute the negligence alleged by the plaintiff against the defendant--the alleged faulty construction of the standard having been already disposed of in this opinion.

The question, then, is, Was the omission of the defendant to notice the play of the bumper and to repair it, and also to provide a greater place for the truck, the plaintiff having been damaged thereby, actionable negligence? Was the plaintiff's evidence of such a character as that it should have been submitted to the jury on the question of defendant's negligence? Or, to put it in another form, was the defendant

guilty of negligence in failing to foresee and provide against what occurred?

After the most careful consideration, we have arrived at the conclusion that there was no evidence on the first issue—as to the defendant's negligence—that ought to have gone to the jury; and the motion to dismiss the action should have been allowed. *Metropolitan Railway Co. v. Jackson,* 3 App. Cases, 193 (1877); Shearman and Redfield on Neg., sec. 56; *Spruill v. Ins. Co.,* 120 N. C., 141. The most frequently cited definition of negligence, that of Alderson, B., in *Blythe v. Birmingham Water Works Co.,* 25 L. J. Ex., 213, is as follows: "The omission to do something which a reasonable man, guided upon those considerations which ordinarily regulate the conduct of human affairs, would do; or doing something which a provident and reasonable man would not do; and an action may be brought if thereby mischief is caused to a third party *not* intentionally." Negligence in law can not exist except in cases where there has been a want of ordinary care upon the part of the person charged with the act of omission or commission; and though damage has resulted from the act of omission, there is no *injuria* if there has been no want of ordinary care. No act or omission, though resulting in damage, can be deemed actionable negligence unless the one responsible could, by the exercise of ordinary care under all the circumstances, have foreseen that it might result in damage to some one. Am. and Eng. Enc. of Law, Vol. 16, page 439; Pollock on Torts, 36, 37; Shear. and Redf. on Neg., 10. There must be, before a recovery can be had in actions for negligence, a breach of duty on the part of the defendant, and the act or omission, producing the breach of duty, culpable in itself, must be such as a reasonably careful man would foresee might be productive of injury; and one is not liable for an injury which he could not foresee. Smith on Neg., 24; *Blythe v. Water Co.,* 11 Exc., 781. In action-

14——129

able negligence, there must be on the part of the defendant not only an act or omission constituting the proximate cause of the injury, but there must be also a want of ordinary care on his part.   There may be damage resulting proximately from an act or omission to act, even in cases where a duty is obligatory, and yet, if there has been no want of ordinary care, there can be no recovery on account of the damage, because there has been no negligence.

There is some confusion in the decisions of the Courts in the definition of "ordinary care" and "proximate cause," but in every case of actionable negligence they must be found together.   Mr. Horace Smith, in his work on the Law of Negligence, distinguishes between the two clearly.   He writes: "The word 'proximately' is to be distinguished from the word 'culpable.'   An act to be culpable, that is, to be a breach of legal duty, must, as we have seen, be such as a reasonably careful man would foresee would be productive of injury, and the person is not liable for an injury which he could not foresee; but a breach of duty to be proximately producing injury must be such that whether defendant could foresee the injury to be probable or not, the breach of duty is in fact the probable cause of the injury."   The same distinction is also well drawn in *Wyley v. West Jersey R. Co.,* 44 N. J. Law, 248, where the Court said: "The law requires that the damages charged to a wrongdoer must be shown to be the natural and proximate effect of his delinquency.   The term 'natural' imports that there are such as might reasonably have been foreseen, such as occur in an ordinary state of things. The term 'proximate' indicates that there must be no other culpable and efficient agency intervening between the defendant's dereliction and the loss."

Ordinary care is reasonable care, "that care which a person of ordinary prudence and capacity would take under like circumstances."   A good test of ordinary care may be found

CARTER v. LUMBER Co.

in 16 Am. and Eng. Enc. of Law, page 402, deduced from the numerous and most respectable authorities cited in the note: "Where a person in the observance or performance of a duty to another has neither done nor omitted to do anything which an ordinarily careful and prudent person, in the same relation and under the same conditions and circumstances, would not have done, or omitted to do, he has not failed to use ordinary care, and is therefore not guilty of negligence, even though damage may have resulted from his action or want of action. And conversely there has been a want of ordinary care, where a person in the observance or performance of a legal duty to another has done or omitted to do something which an ordinarily careful and prudent person, in the same relation and under similar circumstances and conditions, would not have done or omitted, such act or omission being the proximate cause of injury to the other party to the relation."

It is right that one should be required to anticipate and guard against consequences that may be reasonably expected to occur; but it would be violative of every principle of law or justice if he should be compelled to foresee and provide against that which no reasonable man would expect to happen. The business affairs of life would come to a standstill if employers had to busy themselves for their own and their employee's safety in the study of ingenious devices to meet every case of possible damage and hurt. There would soon be neither capitalists nor laborer from the modern view. "The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely to be known in the course of things." Pollock on Torts, 86.

Now, from the facts of this case as they appear from the

plaintiff's evidence, can it be inferred that a reasonable man, engaged in the same or like business, would have anticipated. and provided against the accident which happened? If such an inference could not have been naturally drawn, then there was no injury, though there was damage. The defendant was not negligent, and there is no liability.

As we have said, everything connected with the transfer of the lumber was in good shape—tracks, trucks, platforms, lifting power and chocks. There was nothing complained of but a half of an inch play of the bumper under the collar, and the restricted space in which the track stood. If these defects had been seen by the defendant, it could not have been required of it, in reason, to anticipate and provide against such an accident as occurred. No reasonable person could have anticipated that the falling of a piece of lumber, sixteen feet long, twelve inches wide, and one inch thick, five or six feet on a descending slide at an angle of 33 degrees, could strike those bumpers with such force as to drive from its position the loaded truck, weighing thousands of pounds, over the chocks which were underneath the wheels, the chocks being of sufficient size and of the proper shape.

Error.