FULLER v. RAILROAD.

(Filed March 6, 1906).

*Railroads—Live Stock—Negligence—Questions for Jury.*

1. In an action to recover damages for an alleged injury to a mare, an instruction "That if the jury find that the mare arrived at a junction at 5:15 p. m., and that the defendant had stables at that point; and the defendant knew that it would not be able to forward the mare to her destination till the next morning, and kept her in its car on the track all night without other food or attention than has been testified to, the defendant was guilty of negligence, and if you find that the mare was damaged in consequence of such negligence, you will answer the first issue 'Yes,'" is erroneous.

2. Whether the animal should have been kept in the car or put in the stable, and what food and attention she should have received under the circumstances, were evidently questions of fact for the jury, to be considered by them in passing upon the question of negligence.

3. Negligence is the omission to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such a person under the existing circumstances would not have done.

ACTION by R. F. Fuller against Atlantic Coast Line Railroad Co., heard by *Judge Jas. L. Webb* and a jury, at the October Term, 1905, of the Superior Court of FRANKLIN.

The evidence tended to show that on Monday, November 14, 1904, there was delivered to the Atlantic & North Carolina Railroad Company at New Bern, a brown mare for shipment to the plaintiff at Springhope. In the course of the transit she was received by the defendant company at Goldsboro, the junction of the two roads, on the morning of November 15, at 9:30 o'clock, and at 12 o'clock of the same day she was watered, fed and exercised by one of the employees of the defendant, and was forwarded by the next train to South Rocky Mount, the junction of the main line and the Springhope branch of the defendant's road, where the train arrived at 5:15 o'clock p. m., the same day. There, the car in which the mare was shipped from New Bern was placed on the Springhope track, and remained there until 6 o'clock the next morning, when it was taken to Springhope by the first train out from the junction after its arrival. There was no delay in the transportation of the mare after she left New Bern, she having been carried forward by regular trains in due course and delivered to the agent of the plaintiff at 11 o'clock on Wednesday, November 16. The car in which the mare was shipped was one of the best felt-lined and ventilated cars in use on the line of the defendant—such as are used for transporting tropical fruits—and she had the car all to herself. There was evidence tending to show that the mare was in good condition when turned over to the plaintiff's agent, and other evidence tending to show the contrary. There was no evidence as to the actual state of the weather during the night of November 15, when the mare was on the car at South Rocky Mount, where, it is alleged by the plaintiff, she contracted cold which developed into pneumonia, but from which she recovered.

This action is brought to recover damages for the injury

to the mare alleged to have been caused by the defendant's negligence. The court, among other instructions, gave the following at the request of the plaintiff: "If the jury find that the mare arrived at South Rocky Mount at 5:15 p. m., on November 15, and that the railroad company had stables at that point, and the company knew that it would not be able to forward the mare to Springhope till the next morning, and kept the horse in its car on the track at South Rocky Mount all night without other food or attention than has been testified to, the company was guilty of negligence; and if you find that the mare was damaged in consequence of such negligence, you will answer the first issue 'yes.'" To this instruction the defendant excepted. It is not necessary to refer to the other parts of the charge or to the other exceptions. There was a verdict for the plaintiff, a motion by the defendant for a new trial which was denied, and a judgment upon the verdict. The defendant excepted and appealed.

*W. M. Person* for the plaintiff.
*F. S. Spruill* for the defendant.

WALKER, J., after stating the case: The instruction given to the jury at the request of the plaintiff was erroneous, as by it the court undertook to decide as matter of law what really was a composite question of law and fact. Whether the animal should have been kept in the car or put in the stable, if the defendant had one at South Rocky Mount, and what food and attention she should have received under the circumstances, were evidently questions of fact for the jury, to be considered by them in passing upon the question of negligence, they being guided in arriving at their conclusion, as to the ultimate fact of negligence, by the charge of the court as to the measure of the defendant's duty. The evidence was not clear as to whether the defendant had a stable at that place, the witness Gordon having been asked the question, "Has the

defendant any stock-pen or stable in South Rocky Mount?"
and answered in the affirmative; but we have treated the in-
struction as if the question had been expressed conjunctively
instead of disjunctively, and have assumed that the defendant
had a stable there. The instruction distinctly implies that
the mare should have been stabled for the night, otherwise
there would have been no use in referring to the stable at all.
Whether it was better to have kept her in the car or to have
put her in the stable, was also a question for the jury to be
considered by them in making up their verdict upon the ques-
tion of negligence. The facts recited in the instruction did
not in law constitute negligence *per se,* but were no more
than evidentiary facts. The jury might have decided that
the acts and conduct of the defendant did not cause the sick-
ness of the animal, but that the cold was contracted before she
was received by the defendant, or was an unavoidable incident
of the journey and was not attributable to any negligent act
or omission of the defendant. Notwithstanding the facts
recited, the defendant may have been free from blame. It
is true the judge told the jury they must find that the mare
was injured in consequence of the negligent acts of the de-
fendant, which he recited in the instruction; but the fault in
the charge is that the jury had already been told that certain
facts constituted negligence, which the law did not so regard
and which the jury, if properly instructed, may have found
did not make out a case of negligence under the circumstances.
It is not difficult to see how the jury may have been in-
duced to find that the alleged acts of the defendant, recited
in the instruction, caused the injury when they had been told
that the law characterized them as negligent. They might,
in such a case, readily impute the injury to the defendant's
alleged wrongful acts.

It may be admitted as an axiom that what is negligence is
a question of law, and in this case it is the failure to exercise
that degree of care which the nature of the situation and the

circumstances suggested and required.  The approved mean-
ing of the term is the omission to do what a reasonable and
prudent person would ordinarily have done under the circum-
stances of the situation, or doing what such a person under
the existing circumstances would not have done.  The duty,
thus imposed, is dictated and measured by the particular
exigencies of the occasion.  The essence of the fault is either
in omission or commission, negligence being either active or
passive.  *Railroad v. Jones,* 95 U. S., 439; *Blythe v. Water
Co.,* 11 Exch., 784; *Carter v. Lumber Co.,* 129 N. C., 203.
This embodies what is known as the rule of the prudent man,
which we have adopted, and we believe most of the courts of
this country have recognized and accepted as the best and the
true standard by which to guage responsibility in actions
for negligence, and by which to determine whether or not
there has been actionable negligence, if the injury was the
natural and proximate consequence of the act complained of.
Negligence is defined as the juridical cause of an injury, and
therefore actionable or followed by liability to another, when
it consists of such an act or omission on the part of a responsi-
ble person, as in ordinary natural sequence immediately
results in such injury.  *Basnight v. Railroad,* 111 N. C., 592;
Wharton Neg., sec. 73.  And it should be added, the party
complained of must, by the exercise of ordinary care, have
been able to foresee that harm or injury would result.  *Carter
v. Lumber Co.,* 129 N. C., 203; *Raiford v. Railroad,* 130
N. C., 597; *Frazier v. Wilkes,* 132 N. C., 437; *Railroad v.
McEwen,* 38 L. R. A., 134; *Drum v. Miller,* 135 N. C., 204.

It is not intended to say that there may not be facts
which, if admitted, established or proved, will constitute neg-
ligence as matter of law.  We are not dealing with any such
question.  It is sufficient, in this case, to hold that the court
should have submitted the case to the jury upon the evidence
and with proper instructions as to what would in law consti-

tute negligence, leaving the jury to find whether there was negligence or not, and if there was, whether it proximately caused the injury.

New Trial.