### ED. M. BRYAN v. HILTON LUMBER COMPANY.

(Filed 5 April, 1911.)

**Master and Servant—Defective Machine—Contributory Negligence—Evidence—Instructions.**

In an action by an employee to recover damages of his employer for a personal injury received in operating a planing machine in defendant's mill, there was evidence tending to show that the machine had revolving cogs operated by steam power, which were left unboxed and exposed, and that a feed gear or shift by which the power was applied and shut off was defective, all of which had been called to defendant's attention. The plaintiff admitted the necessity of shutting off the power before attempting to relieve a choked condition of the machine, and there was contradictory evidence as to whether he waited, after shutting off the power, until the wheels stopped revolving, before attempting to clear the machine, wherein the injury was inflicted: *Held*, the conflict of evidence presented an issue of fact to the jury, and it was error to refuse to instruct the jury that plaintiff was guilty of contributory negligence, should they find that he placed his hand in the machine before the cogs stopped revolving, after he had shut off the motive power, and was thereby injured.

---

BRYAN v. LUMBER CO.

---

APPEAL from *Whedbee, J.*, at October Term, 1910, of NEW HANOVER.

Civil action, brought to recover damages for a personal injury received by plaintiff in operating a planing machine in defendant's mill. The usual issues of negligence, contributory negligence, and damage were submitted to the jury and answered in favor of the plaintiff. From the judgment rendered, the defendant appealed.

The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Brown.*

*John D. Bellamy & Son and George L. Peschau for plaintiff.*
*Davis & Davis and E. K. Bryan for defendant.*

BROWN, J. The plaintiff was an employee of the defendant and engaged in operating a planing machine used in planing planks, and while so engaged his hand and arm were drawn into the cogwheels and severely injured.

The grounds of negligence alleged in the complaint and supported by evidence are that the cogs to the machine were negligently left by defendant unboxed and that the feed gear or shift by which the power was applied and shut off was defective; that defendant's attention was called to the defective feed gear some time before the accident, and defendant negligently omitted to repair it.

The plaintiff gives this account of his injury and how it occurred: "I was feeding the machine with boards, and when one went through it broke up some pieces off one end—I guess, of the board—and that choked it up so I couldn't get a board through it, and I shut off the feed gear and waited until it stopped before I went around to remove the choke. I pulled the lever back, and that released it from running—released the cogwheels from rolling. When I pulled the lever back, that had the effect of running the cogwheels; when you pulled the lever back it released the feed gear so that it would not run. It did this by taking the pressure off of the shafting. It worked with a feed clutch and stopped the machine. The pulling of the lever released the belt so that it was not tight enough

to run the feed gear. After the cogs stopped I went around to remove the choke on the left-hand side. It had a large cog on the right-hand side to prevent one from reaching over to remove the choke from the machine. There was no way of getting to that part of the machine to unchoke it except the way I did—to lean over the cogs. I had to stand on tiptoe to reach over the machine, it was so high. I went around to remove the choke. I took a small piece of board that was laying on the floor to raise up the chip breaker, trying to remove the board which had choked the machine, and while reaching over to remove it the cogs started up in some manner—I don't know what. I took a small piece of board and went to the place and lifted up the chip breaker, attempting to lift it up, and while I was over there attempting to remove the board the machine started up and the exposed cogwheels caught me by the coat sleeve and snapped my arm in it right at my elbow."

There is much evidence *pro* and *con* in the record as to whether boxed cogs were customary and in general use on such a machine, and in charging the jury on that feature of the case his Honor followed the uniform adjudications of this Court.

The defendant's witness, Alfred Robinson, gives a very different account as to how the plaintiff was injured. He testifies as follows: "I am 14 years old, and was working at the Hilton Lumber Company when Mr. Bryan was hurt. I saw him when he was hurt. He was feeding No. 4 machine. I was tying behind the machine at that time when he called me. I was at the other end of the machine. He called me to hold up the chip breaker. Mr. Bryan called me. When he called me, I got a little piece of flooring off of the floor to hold the chip breaker. A piece was partly under the chip breaker and partly under the roller, and he raised the roller a little bit to get it out. He raised it with his hand. He didn't have anything in his hand when he raised it. He reached over to get it one time, and jerked his hand out, and he reached over again, and he didn't pull it out any more. The rollers were running. They were turning both times he reached with his left hand. Both

times he reached with his left hand. He reached over both times with the same hand. He was standing right side of me. I was standing between the chip breaker and the two rollers. He was standing south of me. He was right side of me. I was looking all around. I wasn't noticing him. I saw the rollers. The rollers stopped when he got hung. They did not run long. Time he got hung they stopped."

The defendant requested this prayer for instruction: "If the jury find that plaintiff raised the rollers and ascertained that there was a piece of board caught under the rollers of the chip breaker, and had Robinson hold the breaker up with a piece of wood and then shoved the lever so as to stop the rollers from feeding, but before the rollers stopped he put his hand in between the cogs and his sleeve was caught, he was guilty of contributory negligence, cannot recover, and you will answer the second issue 'Yes.' " To the failure to give such prayer defendant in apt time excepted. ·

A careful examination of the charge discloses that the prayer was not given, and no sufficient and proper instruction in lieu thereof.

The plaintiff, in his own testimony, admits that he knew the cogs were unboxed, for he could easily see them, and that before he undertook to take out the obstruction he threw off the power gear and let the machine stop. He states that the reason he was hurt was because the power gear shift was defective, and unexpectedly started up the cogwheels and machinery, while he had his hand under the machine removing the obstruction.

Just at this point there is a material difference between plaintiff's evidence and that of defendant's witness Robinson.

The defendant contends that, admitting, as plaintiff states, that he threw off the power gear and undertook to stop the machine, according to Robinson's evidence plaintiff did not wait for the machine to stop revolving and come to a standstill, but that he reached to get hold of the obstruction and jerked his hand out, and that while machine was still running he put his hand in a second time and got caught in the cogs, and that after plaintiff got hung the cogs stopped.

The defendant bases its prayer for instruction upon the admission of plaintiff that he undertook to stop the machine before removing the obstruction and upon the evidence of Robinson that plaintiff thrust his hand in twice before the machine stopped, and the second time he was caught in the running cogs.

It would seem to be clear that his Honor erred in refusing to give the prayer requested.

Assuming that the defendant was guilty of negligence in respect to the feed gear and in not boxing the cogs, yet it is patent that if the plaintiff undertook to stop the machine before removing the obstruction because he knew it was dangerous to do so without stopping it, ordinary prudence and common sense demanded that he wait until the revolutions ceased and the machine came to a standstill.

That is what Robinson's testimony shows the plaintiff did not do, and further that had he done so he would not have been injured. If his prudence dictated to him to release the power gear in order to stop the machine, it should have further prompted him to wait until it actually stopped.

This Court has repeatedly held that where there is a safe and a dangerous method available for the performance of his work, and the employee selects the latter method with knowledge of the fact that it is dangerous, he cannot recover for injuries sustained. *Whitson v. Wrenn,* 134 N. C., 86; *Covington v. Furniture Co.,* 138 N. C., 374. In the last-named case, which is somewhat like this, it is said: "A very slight consideration upon the part of the plaintiff, especially in view of his knowledge of the conditions and his experience in operating that machine, would have suggested retaining the plank for a few minutes until the machine could reassert itself and the danger pass away." See, also, *Carter v. Lumber Co.,* 129 N. C., 203.

Upon this view of the evidence, presented by the prayer, the plaintiff was guilty of great negligence, which was the immediate and direct cause of his injury.

Notwithstanding the defendant's negligence in failing to box the cogs or repair the feed gear, the plaintiff had the last

chance to avoid the injury by waiting a few moments only for the revolutions to cease before removing the obstruction.

This brings his negligent act clearly within the idea of proximate cause as expressed by *Mr. Justice Allen,* who says: "Proximate cause means the dominant efficient cause, the cause without which the injury would not have occurred." *Harvell v. Lumber Co., ante,* 254.

Plaintiff's negligent conduct fills to the full measure the requirements of proximate cause as expressed by *Mr. Justice Hoke* in *Ramsbottom v. R. R.,* 138 N. C., 40: (1) It directly produced the result; (2) without it the injury would not have occurred, and (3) a person of ordinary prudence could see that injury was probable under the circumstances.

It must be admitted that if plaintiff's experience and prudence dictated to him to stop the motive power before venturing to remove the obstruction, ordinary prudence must dictate that he wait until the effect of the motive power had ceased and the machine had come to a standstill.

It may be that Robinson's version of the facts is not the true one and that plaintiff's is, and *vice versa;* but that was a matter for the jury to decide, and to that end the rejected prayer for instruction should have been given.

New trial.