W. R. HINSON v. ATLANTA AND CHARLOTTE AIR LINE RAILWAY COMPANY.

(Filed 6 December, 1916.)

**1. Commerce—Railroads—Federal Employers' Liability Act—Federal Decisions—State Courts.**

One employed by a railroad company as hostler for locomotives for its interstate trains is engaged in interstate commerce within the meaning of the Federal Employers' Liability Act, and where he is injured on the company's yard in going home from his work thereon, in his action to recover damages alleged to have been inflicted by the negligence of defendant's employees on its yards, brought in the State courts, the Federal decisions control, and not those of the State court.

**2. Same—Assumption of Risks—Trials—Evidence—Nonsuit.**

An employee of a railroad company in interstate commerce attempted at night to go between connected cars on a "lay off" track, on defendant's yard, uncoupled to a locomotive, though there was afforded him a safe way around the train, and while beneath the drawheads and stretching forward his leg to get out on the other side a locomotive ran upon the cars from another track, without signal or warning, caused the wheel of the car to run over his leg, which was afterwards amputated in consequence thereof. The employee looked to see if there was danger before attempting to cross, and assumed there was none, and there was evidence that employees of the road frequently crossed there in this manner. There was no evidence that the engineer on the locomotive knew of the employee's presence or of his peril. *Held*, under the Federal authorities, controlling upon the facts of this case, the employee assumed the risk, and his own negligence barred his recovery in his action for damages.

CLARK, C. J., dissenting.

CIVIL ACTION tried at September Term, 1916, of MECKLENBURG, before *Justice, J.*

From a judgment of nonsuit, plaintiff appealed.

*C. A. Cochran, Stewart & MacRae for plaintiff.*
*O. F. Mason, F. M. Shannonhouse, W. S. Beam for defendant.*

BROWN, J. The only evidence taken was that offered by plaintiff. Taking that to be true, the court did not err in sustaining the motion to nonsuit.

Plaintiff was a hostler in the yards of Southern Railway Company, lessee of defendant, in Charlotte. On the evening of 20 December, 1914, he started home across the yards and switching tracks of defendant. On his way he encountered a train of coal cars connected together that had been run in on one of the side-tracks that day. Plain-

tiff looked up and down the train of cars and decided to cross the track underneath the cars, and started across underneath the drawhead connecting two of the cars. While he was under the drawhead and putting his leg out across the rail to get out, an engine struck the train with sufficient force to move the train and drive a wheel over his leg. When the engine struck the train plaintiff states he was under the drawhead and had extended his leg across the track to get out. He could not have been seen from the engine or tender nor from the cars.

Plaintiff testifies that before he went under the train he heard the switch engine over in the junction yard, 175 yards away, and felt perfectly safe in so doing, as it was usually the business of the switch engine to move the cars on the set-off tracks. He further states that the path he was going was used by other employees, and that he had seen them, as well as a boss man, cross over the drawheads between cars when the path was blocked by trains. Plaintiff admits that there were other safe ways for him to go home provided by the company and that he could easily have walked around either end of this train. He says: "The reason I did not walk around this string of cars is because I did not think there was any danger." "If I had walked around I don't suppose I would be here today with a lost leg." Plaintiff further testified that he was engaged in preparing engines engaged in interstate commerce for use; that he had just finished preparing Engine No. 4619 to be taken on its run to Greenville, S. C., at 6 p. m., and he was hurt an hour later.

As it appears from the evidence of plaintiff that both he and his employer were engaged in interstate commerce, the case is governed by the Federal Employers' Liability Act, and the law as construed by the Federal courts, and not by the law as expounded by this Court. *Ry. v. Gray,* Advance Opinions U. S. Sup. Court, 22 May, 1916, page 558; *Ry. v. Horton,* 233 U. S., 492; *Mondon v. Ry.,* 223 U. S., 1; *Tel. Co. v. Milling Co.,* 218 U. S., 406; *Lloyd v. R. R.,* 166 N. C., 27.

The facts show that plaintiff had been preparing engines for use in interstate commerce and had within the hour fitted out one to start on its run from Charlotte, N. C., to Greenville, S. C. The road of defendant extends from Charlotte to Atlanta and is under lease to the Southern Railway, a corporation doing business as a carrier in a dozen or more States.

Under such conditions, that plaintiff was a railway employee engaged in interstate commerce has been expressly decided by the Supreme Court of the United States in numerous cases. *N. C. R. R. Co. v. Zachary,* 232 U. S., 348; 58 Law Ed., 591. The following are cases decided in the Federal and State courts.

Round-house employee (an hostler), whose duty it is to clean engines engaged in interstate commerce as well as to operate turntables. *Cross v. Ry. Co.,* 177 S. W., 1127; *Lloyd v. R. R.,* 166 N. C., 27. Employee carrying bolts used in repairing bridge. *Pederson v. Ry.,* 229 U. S., 146. Employees engaged in repairing switches and side-tracks, *Jones v. R. R.,* 149 S. W., 951; *Tuesdale v. R. R.,* 159 Ky., 718; *Lombardo v. R. R.,* 223 Fed., 427.

This subject is elaborately discussed by *Mr. Justice Myers,* Supreme Court of Indiana, in *Railway v. Howerton,* 105 N. E., 1026.

Plaintiff's evidence fails to disclose wherein the defendant failed to discharge any duty it owed him. The habit of employees going under trains instead of around them is not sufficient to charge an engineer with notice that plaintiff was under the drawhead. Plaintiff was a workman of long experience and entirely familiar with the uncertain movements of engines and cars in the yards. The defendant had a right to move cars and engines on the yards as the necessities of its business required, and the only duty under the circumstances that it owed plaintiff was to refrain, if possible, from injuring him in case his precarious condition had been discovered. There is no pretence that plaintiff's condition was discovered, and as he was under the train, it is manifest it could not have been discovered by any one on the engine or tender. The defendant is not required to ring bells and blow whistles every time a car is shifted or a train moved on its switching yards, for the reason stated by *Justice Brewer* in *Aerkfetz v. Humphreys,* 145 U. S., 418: "The ringing of bells and the sounding of whistles on trains going and coming, and switch engines moving forwards and backwards, would have simply tended to confusion. The person in direct charge had a right to act on the belief that the various employees in the yard, familiar with the continuously recurring movement of the cars, would take reasonable precaution against their approach. The engine was moving slowly, so slowly that any ordinary attention on the part of the plaintiff to that which he knew was a part of the constant business of the yard would have made him aware of the approach of the cars and enabled him to step one side as they moved along the track. It cannot be that, under these circumstances, the defendants were compelled to send some man in front of the cars for the mere sake of giving notice to employees who had all the time knowledge of what was to be expected."

Before the plaintiff went under the cars he examined the situation, weighed the chances, and deliberately decided to take the risk. He admits there were other and safe ways to his home, and that he could have easily gone around either end of the train, and candidly said that if he had done so he would not have lost his leg. The ruling of the

HINSON *v.* R. R.

court below is upheld by this Court in *Covington v. Furniture Co.,* 138 N. C., 374; *Dermid v. R. R.,* 148 N. C., 183; *Bryan v. Lumber Co.,* 154 N. C., 485, and other cases.

In the *Covington case* Mr. *Justice Connor* says the plaintiff should not have taken chances in the presence of a well known danger; "and if he did so, and was hurt, he cannot place upon the employer the blame or responsibility."

The same doctrine is declared by the Federal courts. *Cooper v. Headrick,* 159 Fed., 683, and cases cited.

The case of *LeGwin v. R. R.,* 170 N. C., 359, cited in support of the contention of plaintiff, is not decisive of this case. There the railroad company purposely left open spaces between the cars for the employees of the lumber company to pass and repass. Plaintiff was not an employee of the railroad company, but of a lumber company on whose premises the railroad company had run a spur-track to load lumber from the mill. The cars were not coupled together, but spaces were left between them so that the employees of the lumber company could pass to and fro on the latter's yards. Under such conditions LeGwin had a right to expect that the railroad company would not back its engines and cars violently against the separated and uncoupled cars and drive them together without giving proper signals and taking reasonable precautions for the safety of the employees of the lumber company.

As LeGwin was not an employee of the railroad company, his case was tried under the State law, and he was permitted to recover upon the ground above stated. This case comes under the Federal law, which recognizes assumption of risk, and if there was ever a case in which plaintiff assumed the risk of his reckless conduct, it is this.

Affirmed.

CLARK, C. J., dissenting: On 20 December, 1914, the plaintiff was a hostler in the yards of the Southern Railway Company, the lessee of the defendant, at Charlotte. Having finished his work for the day, and it being nearly dark, he started home along the path which had been used by employees of the company for twenty years past. This path crossed a number of railroad tracks, on one of which there was a train of dead cars, standing on what is known as the "set-off" track. The cars ready for movement were on another track, known as the "pick-up" track. When the plaintiff came to the cars on the set-off track he stopped, looked, and listened, according to his evidence, which must be taken as true on this nonsuit, in order to locate the yard engine. There was no bell, whistle, or other signal, nor did the plaintiff see any switchman or brakeman with lights which would have

indicated that these cars were about to be moved. But, on the contrary, he heard the yard engine, the only engine which had a right under the rules and customs of the railroad company to move these cars, in another part of the yard some 175 or 200 yards away.

The plaintiff also testified that under the rule and custom of the defendant, when there was a train of dead cars on this "set-off" track across the path, the employees were in the habit of crossing under them, over them, or between them. There was a beaten path at this point which had been thus used by the employees of the defendant ever since the round-house was built in 1896. The plaintiff seeing no switchman with lights on the train of cars, it being dark at this time, and hearing the yard engine, which alone had the right to move these cars, some distance away, started to cross underneath the drawhead of these cars. Immediately the road engine struck this train of cars with violent force, running one wheel over the plaintiff's leg and cutting it off. The engineer of this road engine testified that he had started to get his train, which was 400 or 500 yards away in another section of the yard, and was backing his engine, and that he could not see in the yards nor could the switchman see, and that it was his engine that struck the train of dead cars which caused the plaintiff's injury, and that he did not know that this train of dead cars was on this "set-off" track, and further that if he or the switchman had known this, the switchman would not have thrown the engine onto this track, but would have followed another track which was open.

After the road engine struck this train of cars by reason of this mistake of the engineer and switchman, it moved back off the set-off track to the other track, which was clear and which should have been used, and went to another section of the yard and got the train of cars which had been made up for it to carry to Greenville, S. C.

Upon this evidence the switchman of the engineer threw the wrong switch and ran the road engine on the wrong track, contrary to the custom and rules of the yard, and cut off the plaintiff's leg. This engine was run backward at a rapid and reckless rate of speed in violation of the rules of the company and in violation of law, without any notice being given of its movement, either by ringing the bell or blowing the whistle or giving any other warning or notice of its approach and movements. There was evidence that the employees, including the bosses, had been in the habit of crossing this track of dead cars at that place since 1896, and that the yard foreman had done so but a few moments before. The evidence thus stated succinctly was very full and complete and was amply sufficient to go to the jury to show negligence on the part of the defendant.

In *Meroney v. R. R.*, 165 N. C., 611, it is said: "This case showed greater negligence on the part of the defendant than *Edge v. R. R.*, 153 N. C., 213. In that case an employee of the defendant was injured while crossing the track underneath the coupling of two box cars. Just before going into this place of danger he had seen an engine standing near the car with steam up and the engineer looking towards him. The Court held that it was a question for the jury whether the defendant could have avoided injuring the plaintiff by the use of ordinary care. In *Hudson v. R. R.*, 142 N. C., 198, it was held culpable negligence where the defendant cut loose a car on a spur-track on a down grade, whereby it crashed into five other cars with sufficient force to drive them, as in this case, causing the death of the plaintiff. In *Beck v. R. R.*, 146 N. C., 455, where the plaintiff started to go between a string of cars in accordance with the established custom, was caught and injured by the sudden attachment, without lookout, signal, or warning of the engine, unseen by him, and in a manner in which he could not reasonably have anticipated, the Court held that the negligence of the defendant was the proximate cause of the injury, and that if the question of contributory negligence should arise upon the facts, it was one for the jury."

In *Williamson v. R. R.*, (Va.) 113 Am. St., 1032, it is held: "If the right of way of a railroad corporation at a particular point has long been in use as a walkway, and this is well known to the company, it is under the duty of using reasonable care to discover and not to injure persons whom it might expect to be on its track at that point."

There was sufficient evidence of negligence to be submitted to the jury upon all our precedents, in some of which the evidence for the plaintiff was by no means as strong as in this case. Whether there was contributory negligence was a matter of defense, and should have been submitted to the jury, for the evidence of the plaintiff showed that he looked and listened and used the track as other employees, including the bosses, had been in the habit of doing for many years, and having first ascertained that the only engine which had a right to move on that track was in another part of the yard, some distance away.

Besides, the defendant in its answer alleged: "If the plaintiff was then in the service of the Southern Railway Company, both he and said company were at that time engaged in interstate commerce, and the defendant alleges that the act of Congress, commonly known as the Federal Employers' Liability Act, applies to and governs this case." If so, contributory negligence is not a defense, but the case should have been submitted to the jury to apportion the abatement on that account from the amount of damages otherwise recoverable. The plaintiff was unquestionably in the service of the defendant from the

time he entered the yard of the defendant on his way to his work, and until he left the yard on his way home, which he had not done when he was struck and injured by the negligence of the engineer in running his engine on the wrong track without lights or signal and injuring the plaintiff when he was using the accustomed way in crossing the track of dead cars, as had been done by all the employees to the knowledge and with the implied permission of the defendant for eighteen years—since 1896.

In *Zachary v. R. R.,* 156 N. C., 496, where an employee was killed in crossing a track on the railroad yard (which was reversed on writ of error, but not on the question of negligence or contributory negligence), *Mr. Justice Brown* said: "Was the evidence of negligence sufficient to justify the court in submitting the matter to the jury? We think so. The evidence offered by the plaintiff tends to prove that the deceased was compelled to cross the several tracks of the railroad to go from his engine to his residence; that it was customary for all employees to pass to and fro over these tracks; that it was dark at the time, and the switching engine was running backwards; tender foremost, from 15 to 20 miles an hour. Two witnesses testify that there was no light whatever on the end of the tender that was moving forward, nor any flagman there. This is ample evidence of negligence to go to the jury. *Ray v. R. R.,* 141 N. C., 84; *Smith v. R. R.,* 132 N. C., 819; *Purnell v. R. R.,* 122 N. C., 832."

In *LeGwin v. R. R.,* 170 N. C., 359, where the plaintiff was injured by going between two railroad cars, the Court held: "It was negligence for the railroad company, without warning or signal and without a proper lookout on the train or in the yard to warn the plaintiff, to back the engine and strike the car which injured the plaintiff." In that case the Court held that contributory negligence was not shown by evidence that had the plaintiff gone 60 or 70 feet around the car he could have crossed in safety. To same effect, *R. R. v. Price,* 221 Fed., 228.

There was no evidence of assumption of risk, for this is not a risk incident to the nature of the employment, but the injury was caused by the negligence of the defendant company in running over the plaintiff when passing out of the yards in the accustomed manner, which had been used so many years by the employees.

The case should have been submitted to the jury upon the evidence to pass upon the issues of negligence and contributory negligence, and, if these were found in favor of the plaintiff, to assess the damages.