## COVINGTON v. FURNITURE CO.

(Filed May. 16, 1905.)

*Master and Servant—Contributory Negligence.*

1. Where there is a safe and a dangerous method available for the performance of a servant's work and he selects the latter method with actual knowledge of the fact that it is dangerous, he cannot recover for injuries sustained.

2. Where the plaintiff was experienced in operating a machine and knew that the chances were a person would get hurt unless he waited a few minutes until the machine could re-assert itself when other machinery was attached, yet he took the chances and was hurt, *held*, that he was guilty of contributory negligence.

ACTION by D. A. Covington against Smith Furniture Company, heard by *Judge R. B. Peebles* and a jury, at the February Term, 1905, of the Superior Court of GUILFORD County.

Action to recover damages for injuries sustained by plaintiff while working in defendant's employment. Plaintiff alleged that he was injured in operating a jointer. That he began work in July and continued till September, 1903; that he had been engaged at work on similar machines in other factories some five or six years; that he was an experienced man in such employment; that at the time he was injured he was running two pieces of dry oak timber about 15 inches long and 7 inches wide over the jointer, that the piece of timber resting under his hand had a knot in it; was hard and curly where knives struck it about one inch at the end of the board. The jointer, together with other machines, was operated by the steam engine; that the speed of the machine upon which plaintiff was at work was affected when the heavy planer near to it was attached. That lumber is worked through the machine, the operator putting his hand on top of it. The knives struck the corner and knocked it

out from under plaintiff's hand. The speed of the machine was about eight thousand revolutions of the roller on which the knives was set per minute. When plaintiff was hurt, another planer was put in operation by the operator throwing the belt on it and starting it to running. This reduced the speed of the machine and caused it to throw the piece of timber back knocking it out of plaintiff's hand and bringing his hand in contact with the knives. Plaintiff testified that the engine had not sufficient power to run all of the machines in the shop. That when the heavy planer was attached it reduced the speed of the machine operated by him for as much as five minutes until the engine could reassert itself. That just before he put the board on the machine he saw them couple up with the planing machine. That was just before he started the board on it. That he had seen them do that before, and knew that the speed of this machine would slacken for a while; that he knew it made it more dangerous, that he had not realized how dangerous it was; that he had boards to jump out before when the blades of the knives hit a knot or hard place in the board, and when the board was pushed over while the speed of the engine was checked, the board would kick; that he said the machine slackened before putting the board on it, and he had been cautioned about the careless manner in which he was running the timber across the machine; that he knew the engine was insufficient to run all of the machines in the shop, about two months before the accident.

J. B. Hassell, witness for plaintiff, testified that he was running the planer and threw the belt on his planer and started it in motion while the plaintiff was working at his jointer; that he had observed that this machinery would slow down when his was attached, and in a short time after throwing the belt on, the plaintiff came to him with his hand injured; that he examined the piece of wood the plaintiff was working, and it looked as if it had started over the

knives before the jointer slowed up; that the engine was an 80 horse power and not in good order, and should have been 100 horse power to run all the machinery in the factory; that throwing the planer on would slacken the speed of the engine; it would catch up its speed after a while; most of them in the shop knew it; it required about five minutes to reassert itself; after it checked, any one could see that it was not running at its usual speed, and its speed showed when the witness put on the planer. After the injury the engine ran the jointer all right. He stated that there was more danger in getting cut when the jointer was running slow; that it would knock out the plank oftener when running slack—the chances were that the person would get hurt.

There was no evidence that any complaint was made to the owners or managers of the defendant company in regard to the engine. At the conclusion of the plaintiff's testimony the defendant moved for judgment of nonsuit. The motion was allowed and the plaintiff appealed.

*E. J. Justice, W. P. Bynum, Jr.,* and *G. S. Ferguson, Jr.,* for the plaintiff.

*Brooks & Thomson* for the defendants.

CONNOR, J., after stating the facts: The correctness of the judgment of nonsuit depends upon the application of some well settled principles of law. Taking the plaintiff's evidence and all inferences to be drawn therefrom most favorable to his view, the question arises whether there was any breach of legal duty on the part of the defendant in respect to the engine and its relation to the machine which he operated. He says that it did not have sufficient capacity to move steadily and without variation all of the machines in the shop; that when the heavy planer was attached, it slackened the speed of the machine which he was operating, for a few minutes. One witness says that in five minutes the

engine would reassert itself. This condition was known to the plaintiff for two months prior to his injury. Without conceding as a matter of law that this condition constituted negligence on the part of the defendant, but assuming for the sake of the argument that it did, we proceed to consider the duty which arose on the part of the defendant. He says that he knew the effect produced upon his machine and the increased danger when the heavy planer was attached. He further says that on the occasion upon which he was injured, he saw the belt thrown upon the heavy planer and saw his machine slacken. Notwithstanding this, he continued to push the board upon the knives which, he says, he knew was dangerous, although he did not realize the full extent of the danger. He says that in this condition a person would get hurt oftener or that the chances of getting hurt were greater than of not getting hurt. There is no question involved in this case in respect to the duty of the plaintiff to quit the employment upon discovery of the incapacity of the engine. What was his duty when he saw the condition by which he was confronted and knew that it was dangerous? If he had waited for a few minutes, not exceeding five, before pressing the board upon the knives, the engine, reasserting itself, would have moved steadily. Was it not his duty in the exercise of ordinary care and prudence to have done so? The general rule of law is "that when the danger is obvious and is of such a nature that it can be appreciated and understood by the servant as well as by the master or by any one else, and when the servant has as good an opportunity as the master or any one else of seeing what the danger is, and is permitted to do his work in his own way and can avoid the danger by the exercise of reasonable care, the servant cannot recover against the master for the injuries received in consequence of the condition of things which constituted the danger. If the servant is injured, it is from his own want of care   *   *   *   This rule is especially applicable when the

COVINGTON *v.* FURNITURE CO.

danger does not arise from the defective condition of the permanent ways, works or machinery of the master, but from the manner in which they are used, and when the existence of the danger could not well be anticipated but must be ascertained by the observation at the time." Labatt, 333.

The same principle may be stated in the usual formula that where there is a safe and a dangerous method available for the performance of the work in hand and the servant selects the latter method with actual knowledge of the fact that it is dangerous, he cannot recover. We think that an application of these well established rules to the evidence sustains the judgment below.

Without entering upon the many and difficult questions arising out of cases involving assumption of risk, contributory negligence and proximate cause, we think that but one conclusion can be drawn from the evidence in this case. A very slight consideration upon the part of the plaintiff, especially in view of his knowledge of the conditions and his experience in operating that machine, would have suggested retaining the plank for a few minutes until the machine could reassert itself and the danger pass away. *Carter v. Lumber Co.,* 129 N. C., 203. His witness states that there was more danger in getting cut when the jointer was running slow, that the chances were a person would get hurt. This the plaintiff knew. He should not have taken chances in the presence of an obivous, apparent and well known danger; if he did so and was hurt, he cannot cast upon his employer the blame or responsibility. *Elmore v. Railroad,* 132 N. C., 865. There is

No Error.