DELLA HELMS, Administratrix, v. SOUTH ATLANTIC WASTE COMPANY.

(Filed 1 December, 1909.)

1. **Master and Servant — Negligence — Duty of Employer — Safe Appliances—General Use—Evidence.**

   It being the duty of the employer to furnish the employees proper implements and appliances which are reasonably safe and suitable for the work in which they are engaged, and such as are approved and in general use, and to keep them in repair by the exercise of reasonable care and supervision, where an employee sues to recover damages for an injury alleged to have been caused by his negligent failure to furnish them, etc., it is competent to show by proper testimony what implements were in general use at the time in the same mill or in other well-equipped and well-conducted mills of the kind in which the employee received the injury or in which power was applied in the same or similar manner.

2. **Same.**

   The plaintiff employed in defendant's mill received the injury complained of while using a detached stick furnished by the latter, to shift a belt from a loose to a fast pulley on a· machine run by steam power. *Held*, competent to show that in this and other mills where power was applied by a belt in the same manner, it was usual and customary to have a safer device for the purpose called a shifter; and it was not material whether the machines were of different kinds or used for different purposes, if the method of applying the power and dangers incident to it were substantially the same; and while an isolated and single instance is not sufficient to establish a custom, it is competent to begin with one instance if followed up by others sufficient to show that such use was general and customary. *Marks v. Cotton Mills*, 135 N. C., 287, cited and distinguished.

3. **Master and Servant — Negligence — Cause of Injury — Direct Evidence.**

   Testimony of a witness that he saw the plaintiff in the act of pushing a belt with a detached stick from a loose to a fast pulley to communicate power to a machine at which he was at work, and that he saw the belt snatching· the plaintiff down in the

machine after he, witness, had reached down for more cotton and had raised up again, is direct evidence that the plaintiff's injury was caused by the belt.

APPEAL from *Councill, J.,* March Term, 1909, of MECKLEN-BURG.

Civil action, to recover damages for alleged negligent killing of plaintiff's intestate.

There was evidence tending to show that on 1 August, 1908, the intestate, an employee of defendant company, at work in its mill, was killed in the endeavor to push the belt, by which the power was applied to a machine, called a waste cutter, or waste chopper, from the loose to the tight pulley. The belt was in motion at the time, and the intestate, in the effort to push the belt from the loose to the tight pulley, as stated, was using a detached stick, supplied by the defendant for the purpose, and, while so engaged, was caught in the belt and thrown against the machine and killed.

There was further evidence, admitted over defendant's objection, tending to show that on the other similar machines in this mill there was a device called a shifter, by which the belt was pushed from one pulley to the other, the device operating by leverage and enabling the employees to shift the belts in comparative safety. It was further shown—and this, too, over defendant's objection—that in this and other mills, where the power was applied by a belt in the same manner, it was usual and customary to have this device, called a shifter.

The jury rendered the following verdict:

1. "Was the plaintiff's intestate injured by the negligence of the defendant, as alleged in plaintiff's complaint?" Answer: "Yes."

2. "Did plaintiff's intestate contribute by his own negligence, as alleged in the answer, to his injury and death?" Answer: "No."

3. "What damages, if any, is the plaintiff entitled to recover?" Answer: "$3,850."

Judgment on the verdict, and defendant excepted and appealed.

*Stewart & McRae* for plaintiff.
*Cameron Morrison* for defendant.

HOKE, J., after stating the case: In *Hicks v. Mfg. Co.,* 138 N. C., at p. 325, it is said to be "accepted law in North Carolina that an employer of labor to assist in the operation of railways,

mills and other plants where the machinery is more or less complicated, and more especially when driven by mechanical power, is required to provide for his employees, in the exercise of proper care, a reasonably safe place to work, and to supply them with machinery, implements and appliances reasonably safe and suitable for the work in which they are engaged, and such as are approved and in general use in plants and places of like kind and character; and an employer is also required to keep such machinery in such condition, as far as this can be done, in the exercise of proper care and diligence. *Witsell v. Railroad,* 120 N. C., 557; *Marks v. Cotton Mills,* 135 N. C., 287."

The principle, so stated, was reiterated in the same terms in *Fearington v. Tobacco Co.,* 141 N. C., 80, and has been upheld before and since in numerous cases before us, as in *Pressly v. Yarn Mills,* 138 N. C., 410; *Lloyd v. Hanes,* 126 N. C., 359; *Sims v. Lindsay,* 122 N. C., 678. Having established this as an arbitrary standard—that is, machinery, implements and appliances which are reasonably safe and suitable for the work in which they are engaged, and such as are approved and in general use—and imposed the duty on the employer of supplying such implements, and keeping them in order by the exercise of reasonable care and supervision, it is clearly permissible to show by proper testimony what implements were in general use in the same mill or in other well-equipped and well-conducted mills of like kind, or where power was applied in the same or similar manner. Thompson's Commentary on Negligence, sec. 7776. This was the line of testimony suggested as competent in the case of *Marks v. Cotton Mills,* 135 N. C., 287, a case which seems to have been very closely followed in the present trial. True, in that case it was held that testimony by a single witness of having seen one other frame with the "cogs boxed up" was not of itself sufficient to show that such a custom existed, but decided intimation is given that proof of the custom in a "number of other mills could be shown," and it was not at all decided in that case that plaintiff could not begin this proof by showing its existence in one mill if it had been properly followed up by showing similar conditions in other mills. As said in the opinion: "The question and answer were not excluded, but admitted, and there was no additional evidence offered by the plaintiff tending to show that cog wheels in mills other than the one mentioned by the witness are boxed. The plaintiff perhaps might have shown that boxes were in general use by proving that a number of mills used them, but this he did not attempt to do. He had the full benefit

of the right to begin his proof, and did begin it, but failed to complete it."

It will thus be seen that while a new trial was awarded in that case, it was because the testimony as to "another machine" stood as an isolated and single instance to establish a custom, and not that it was incompetent to begin with one instance if followed up by others sufficient to show that such use was general and customary. The position urged by counsel, that the testimony was incompetent because it was not applied to machines of the very same kind as the one presented here—that is, a waste chopper— is not tenable. The danger arose from the method of applying the power by the shifting of the belt, the negligence being the failure to furnish the usual device by which the incident danger was minimized, and it does not appear that the character of the machine would seriously or substantially affect the result. It was the drawing power of the belt and the danger of being caught in it which rendered the use of the shifter desirable and necessary for the employee's protection; and therefore the testimony as to its customary and general use in this and other mills, where the power was similarly applied and the belt controlled, was competent, under the rule. Nor can the objection be sustained that there was no sufficient testimony that the injury was caused by the belt. Not only was such a result probable from the objective facts, but there is direct evidence to that effect.

Thus, Nathaniel Fincher, a witness for the plaintiff, testified, among other things, as follows: "Mr. Helms was standing on upper side. He had a stick, pushing belt on tight pulley; he had a stick and was pushing the belt. The stick was about three feet long. He took the stick in his hand and pushed it against the belt, moving the belt from toward him. When I saw Mr. Helms pushing on the belt, I reached for some more cotton, and when I raised up I saw the belt snatching him down in the machine. The stick flew out of his hand."

There was no reversible error shown, and the judgment below is affirmed.

No error.