Action to recover damages for injuries caused by the negligence of defendant. The plaintiff alleged and offered evidence tending to prove the following case, the truth of which must be assumed, as the jury answered the issues in his favor: He was employed by the defendant as an operator of a glass smoothing stone, run by a quarter-turn belt from a pulley on the spindle, upon the top of which the stone (275) was attached to a pulley on the main-line shaft, which was some 20 inches from the floor and 8 or 10 feet from the stone, the motive power being electricity, the stone at which plaintiff was working being one of six, all receiving their power from the same source, so that, in order to stop one, it was necessary to cut off the power at its source, and thus stop all; the pulley on the main-line shaft was within 3 inches of a 6-inch coupling, which had no not collar. In the orderly and necessary course of the work, plaintiff was frequently required to stop the stone at which he was at work, and the same was true of the other operators of the smoothing stones; and the only way to do this was to throw the belt off the mainline pulley while the machinery was in motion; there was provided no means or method of throwing the belt, *Page 257 
as by a tight and idle pulley, a belt shifter, or other device, but the operator was required to get it off the best way he could, while the machinery was in motion; and this resulted in a custom of shoving it off with the foot, which was known to and acquiesced in by the defendant's foreman, Metnett. A short time prior to the date on which the plaintiff was injured, the belt used to run the stone at which he was at work had been cut, it having become too loose, and in fastening it back it was too short, and consequently tight, so that it stretched the lacing by which the ends were fastened together, leaving a space between the ends wider than formerly. The defendant permitted and required the belt to be shifted by the use of the foot, which custom and condition had existed for a long time, to the knowledge and with the acquiescence of the foreman, Metnett, who was in charge of the plaintiff and who hired him, and had a right to discharge him. On 10 January, 1911, it became necessary for the plaintiff to remove the belt from the main-line pulley, and in endeavoring to do so in the usual and required manner, towit, by pushing it off with his foot, the sole of the shoe of his left foot was caught in the space where the ends of the belt were fastened, drawing his foot to the shaft, catching the heel of his shoe between the unprotected coupling and the pulley, fastening his foot and crushing both the bones between the ankle and the knee, so that his leg was badly injured.
The allegations of negligence are that the defendant — (276)
1. Failed to provide such appliances and to so equip and maintain its machinery and so conduct its business and operations as to afford a reasonable protection against dangers incident to the work, thereby exposing and subjecting its employees to unreasonable and unnecessary risks and dangers.
2. It failed to furnish the plaintiff a reasonably safe place to work, in that it allowed the work to be habitually conducted in a manner needlessly dangerous.
3. It failed to provide some means of shifting the belt, either by idle and tight pulleys, a belt shifter, or a clutch; these devices being known, approved, and in general use.
4. Its machinery, in the light of the requirement and the custom to shift the belt with the foot, was negligently equipped and maintained, in that the pulley on the main-line shaft, over which the belt ran, was in a few inches of a coupling, said coupling being unprotected.
5. That in repairing the belt shortly before the day on which the plaintiff was injured, it had been cut so short that, in the orderly use of it, the fasteners were pulled apart, leaving a larger space than usual between the ends. The plaintiff's evidence was that there was no device *Page 258 
or appliance of any kind furnished; that the foreman knew of the use of the foot by the plaintiff and others to remove the belt, and had himself thrown off belts in that way in the presence of the men in the factory; that the other operators threw off the belt like the plaintiff did.
This was plaintiff's contention.
Defendant, on the contrary, alleged and offered strong evidence to show that the plaintiff was provided with a perfectly safe method of throwing or shifting the belt, so as to stop the machine, namely, an iron pipe, which, if it had been used, instead of the foot, would have accomplished the desired purpose, and that plaintiff kicked, or attempted to kick, the belt from the pulley or drum of his own volition and in direct violation of instructions. It contended that this was shown by witnesses who testified for plaintiff, and also by defendant's witnesses. There was no contention by plaintiff that the stopping of the machine was (277) made necessary by any negligence of the defendant, but the only negligence was in the method of stopping it, even when it was necessary to do so in its normal operation.
Under the evidence and instructions of the court, the jury returned the following verdict:
1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? Answer: Yes.
2. Did the plaintiff, by his own negligence, contribute to his injuries, as alleged in the answer? Answer: No.
3. What damage, if any, is the plaintiff entitled to recover? Answer: $4,500.
After stating the case: This case, as it appears to us, even under a critical examination of the rulings and charge of the court, has been tried in exact accordance with well settled legal principles, so much so that the record presents little more than the decision by the jury of a question of fact adversely to the appellant.
We have so often stated the rules applicable to the relation of master and servant, employer and employee, that there is nothing more to say without vain and useless reiteration. The issue between the parties in this case was clear-cut. It involved two leading and decisive questions: first, whether, by failure to supply reasonably safe and proper tools and appliances to the servant for the performance of his work, the master had been guilty of negligence which proximately caused the injury; and, second, whether the servant, in the exercise of due care, should have *Page 259 
known of the risk and understood and appreciated the apparent danger, and nevertheless has continued in the performance of the work in the presence of this obvious peril. Both of those propositions were fully and clearly explained to the jury by the court, in the light of the evidence, considered in both of its phases, and as it bore upon the contentions of each party.
The master's duty does not end when he has supplied safe machinery, for the methods of its operation must also be (278) reasonably safe and such as would be compatible with the exercise of ordinary care, this being the general standard by which to measure the extent of that duty, and the obligation of the master to his servant. The master should not be permitted to so conduct his business operations that he constantly exposes his servants to a needless and unreasonable danger, that is, a danger that could be avoided by the exercise of ordinary care, as it would give the employer of labor a privilege that other persons do not possess, for the maxim, sic utere tuo — unless, indeed, the employer of labor is to be an exception thereto — requires that no man in conducting his business may unnecessarily and without reason disregard the rights of others, whether employees or strangers. "A salutary principle like this, which constitutes the very foundation stone of private rights, is not lightly to be broken in upon, and the grounds upon which any exception to it claims recognition should be closely scrutinized. Can it fairly be said that the reasons for thus putting employers in a class by themselves are stronger than those which would subject them to the same responsibility as other persons?" Labatt on Master and Servant, sec. 962. This same principle we announced inMarks v. Cotton Mills, 135 N.C. 287: "The employer does not guarantee
the safety of his employees. He is not bound to furnish them an absolutely safe place to work in, but is required simply to use reasonable care and prudence in providing such a place. He is not bound to furnish the best known machinery, implements and appliances, but only such as are reasonably fit and safe and as are in general use. He meets the requirement of the law if in the selection of machinery and appliances he uses that degree of care which a man of ordinary prudence would use, having regard to his own safety, if he were supplying them for his own personal use. It is culpable negligence which makes the employer liable." And again: "The rule which calls for the care of the prudent man is in such cases the best and safest one for adoption. It is perfectly just to the employee and not unfair to his employer, and is but the outgrowth of the elementary principle that the employee, with certain statutory exceptions, assumes the ordinary risks and perils of the service in which he is engaged, but not the (279) *Page 260 
risk of his employer's negligence. When any injury to him results from one of the ordinary risks or perils of the service, it is the misfortune of the employee, and he must bear the loss, it being damnum absque injuria; but the employer must take care that ordinary risks and perils of the employment are not increased by reason of any omission on his part to provide for the safety of his employees. To the extent that he fails in this plain duty he must answer in damages to his employee for any injuries the latter may sustain which are approximately caused by his negligence."
The law applies the golden rule, that the master must do for the servant what, if placed in the same situation and under the same circumstances, he would do for himself. There is no reason of logic or justice which requires that he should do less. This rule has been applied by us to causes here with great frequency and uniformity. We have not departed in the least from its essential principle in a single case that we are aware of. It is perfectly just to the employer and is required by a proper sense of fairness to the employee. It is the abstract maxim which we are constantly told should govern our conduct towards our fellow-man in the everyday affairs of life, and it is so commendable in itself as to call for a strict observance of it when we come to the practical discharge of our duties to others, especially those in subordinate positions, and who must depend for their safety upon the care of their superiors.
The master must supply not only reasonably safe machinery, but a reasonably safe place for his servant to perform the work. He fails in this respect, we said in Terrell v. Washington, 158 N.C. at p. 289, "if he allows work to be conducted there habitually in a manner needlessly dangerous to servants." We said in Pigford v. R. R., 160 N.C. at pp. 100 and 101: "It is well understood, however, that an employer of labor may be held responsible for directions given or methods established of the kind indicated, by reason of which an employee is injured. It is as much the duty of the master to exercise care in providing the (280) servant with reasonably safe means and methods of work, such as proper assistance for performing his task, as it is to furnish him a safe place and proper tools and appliances. The one is just as much a primary, absolute, and nondelegable duty as the other. When he intrusts the control of his hands to another, he thereby appoints him in his own place, and is responsible for the proper exercise of the delegated authority, and liable for any abuse of it to the same extent as if he had been personally present and acting in that behalf himself. This rule is well settled." These principles have been often adjudicated, and in fact they are but self-evident propositions, suggested by the *Page 261 
promptings of natural justice. They have been applied in numerous cases.Shaw v. Manufacturing Co., 146 N.C. 239; Tanner v. Lumber Co., 140 N.C. 475;West v. Tanning Co., 154 N.C. 44; Hamilton v. Lumber Co., 156 N.C. 523;Norris v. Cotton Mills, 154 N.C. 474; R. R., v. Herbert,116 U.S. 642; Shives v. Cotton Mills, 151 N.C. 290;Ainsley v. Lumber Co., ante, 122.
Our cases have all converged to this result, that while absolute safety in the protection of the employee is not exacted of his employer, yet the duty of the latter requires that he make every provision for the former's security against injury, while performing his work, which would be suggested to one using ordinary care and skill in like circumstances; and this duty extends to all machinery, tools, appliances, places of work and the means and methods of performing it, and the employer should attend to these things in the same way, and make reasonable provision for his employee's safety, as he would for himself if placed in the same situation.West v. Tanning Co., supra.
Whether the master fully discharges his duty by furnishing appliances generally used and approved by others engaged in similar employment, is a question not necessarily before us. It has been held that the final test of negligence (in this respect) is not usage or custom merely, but the inflexible rule which fixes reasonable care as the standard by which conduct of the master to his servant is measured (Schiller v. Breweries, 156 Mo. Ap., 569), and that the appliances furnished, methods employed, and places provided for the safety of the servant (281) should be such as commend themselves to an ordinarily prudent man. Geno v. Paper Co., 68 Vt. 568; 3 Labatt (Ed. 1913), sec. 947 and notes.
We will not now say more upon this question, as it has not arisen so as to require any expression of opinion from us as to what should be the exact rule to be followed by the employer. Without dissecting the charge and examining it in detail, it is sufficient to say that the court charged fully and correctly upon the first issue, and in accordance with the principle we have stated, and which is thus epitomized in Smith v. Baker, (1891), A. C., 325: "An employer is bound to carry on his operations so as not to subject those employed by him to unnecessary risk, and he is not less responsible to his workmen for personal injuries occasioned by a defective system of using machinery than for injuries caused by a defect in the machinery itself."
Some of the exceptions of the defendant seem to be directed to what is alleged to be an imperfect comparison of methods and appliances adopted by this defendant and those used in similar businesses. It is not required, in making the comparison of usages, "that the *Page 262 
establishment which is adduced by the servant as furnishing the proper standard of safety and suitability should be precisely similar to that of the defendant. A reasonable similarity is sufficient. But evidence of usage should be rejected unless there is a fairly close parallelism between the conditions to which the evidence relates and those which existed at the time and place with which the action is concerned." Labatt (Ed. 1913), sec. 950. It is substantial similarity and not entire sameness that is required for the test. This is the rule we have adopted in making comparisons of value, when the conditions are substantially the same. You cannot hope for exactitude in such matters, for it is rarely that two things are precisely alike, although they may be sufficiently so for the purpose of a safe comparison. Warren v. Makely, 85 N.C. 12; Chaffinv. Manufacturing Co., 135 N.C. 95; Johnson v. R. R., 163 N.C. 431; Bruner v. Threadgill, 88 N.C. 361.
(282) There was no error in respect to the proof of custom and usage in other mills of a like kind, either in the admission of the evidence or the treatment of it afterwards. What is said by JusticeHoke in Helms v. Waste Co., 151 N.C. 370, is decisive of this question: "The position urged by counsel, that the testimony was incompetent because it was not applied to machines of the very same kind as the ones presented here, that is, a waste chopper, is not tenable. The danger arises from the method of applying the power, by the shifting of the belt, the negligence being the failure to furnish the usual device by which the incident danger was minimized, and it does not appear that the character of the machine would seriously or substantially affect the result. It was the drawing power of the belt, the danger of being caught in it, which rendered the use of a shifter desirable, and necessary for the employee's protection, and therefore the testimony as to its customary and general use in this and other mills, where the power was similarly applied and the belt controlled, was competent under the rule." See, also, Phillips v. Iron Works,146 N.C. 209. The case of McGar v. N. P. W. Mills, 22 R. I., 347, is a more direct authority, as it deals with similar facts.
Whether it was practical for the defendant to use any other device than a metal pipe for the purpose of insuring safety to its employee, and whether ordinary prudence required the use of it, were questions for the jury, which were properly submitted to them. If the situation called for the use of a different device, and this would have appeared to the ordinarily careful man, under the same circumstances, it was the duty of the defendant to supply it, instead of needlessly subjecting his servant to danger. Rogers v. Manufacturing Co., 157 N.C. 44. There was evidence which warranted the submission of all these questions to *Page 263 
the jury, and the charge in this, as in every respect, was eminently fair to the defendant.
Whether the plaintiff carelessly exposed himself to the danger, or continued to perform his work in the presence of an obvious peril, were also questions for the jury, subject to proper direction from the court, which was given. The court, among other things, said upon this phase of the case: "An unusual and unnecessary risk, if created (283) by the master's negligence, although the servant may know of it, will not defeat a recovery, should be remain in the service and continue to do the work subject to that risk, unless the danger to which he is exposed thereby is so obvious and imminent that the servant sees and understands it fully. Where the master by his own negligence has brought about a dangerous condition with which the servant is confronted, the obviousness of the danger and the impression the situation would make upon a man of ordinary prudence and discretion, with respect to his own safety, determines the servant's measure of duty to himself. Under such circumstances, the fact that the particular service was rendered with the knowledge and approval of the employer or his vice principal, or under his express direction, and the servant's reasonable apprehension of being discharged in case he does not perform the work prescribed by the master, are circumstances relative to the inquiry and may be considered by the jury." The court charged further, in substance, that to constitute assumption of risk or contributory negligence, it was necessary to show: "That the plaintiff knew and appreciated the danger which he was incurring; or, in the exercise of reasonable care, should have known and appreciated it; or that the manner in which he was doing the work was so obviously dangerous that a man of reasonable prudence would not have done it; or that, in the performance of his work, he did not exercise reasonable care for his own safety; or was warned or instructed not to use his foot." There was no error in these instructions, and they were fully explained to the jury in their application to the facts. Pigford v. R. R., supra; Hamilton v. Lumber Co., supra. We said in Pigford's case: "The servant is not required to retire from the service or to refuse to go on with his work unless, as we have said, the danger is obvious or he knows and appreciates it. He may know of the risk without fully appreciating the danger. Whether such a situation was presented to him at the time of the injury is a question for the jury, to be decided generally upon the rule of the prudent man." What would be an obvious danger, requiring the servant to look out for his own safety and to take care of himself in the exercise of proper care, (284) was also clearly defined by the court to the jury, according to the rule laid down in Hinshaw v. R. R., 118 N.C. 1053; Hicks v. *Page 264 Manufacturing Co., 138 N.C. 328, and Pressly v. Yarn Mills, 138 N.C. 410, and especially in Mincey v. R. R., 161 N.C. 467; Hamilton v. LumberCo., supra, and Pigford v. R. R., supra. If the plaintiff was instructed to use an implement which was sufficient to perform the work with safety to himself, and failed to do so, and was thereby proximately injured, the result was, of course, caused by his own fault; but this was explained to the jury. The fault here was that of the defendant in permitting a dangerous method to be constantly used, with the full knowledge thereof, through its vice principle.
The expert testimony of the witnesses J. L. Critz and L. E. Fishel, as to the use of a certain device for removing a belt, the purpose for which it is used and its effect with reference to the safe operation of the machine, and as to the tensile strength of the belt when laced or fastened together at its ends with hooks of the kind shown to the witnesses, and as to the effect upon the hooks and the belt if it pulls apart, was competent, as they qualified themselves to express an opinion upon the matter. Cyc. of Law and Procedure, vol. 17, at p. 71, says: "Those persons who are skilled in mechanical matters are competent to testify as to relevant facts which are familiar in the mechanic arts. Such facts may be simple and involve little of the element of reasoning; as, for example, the action of natural laws, the limits of ordinary observation, the lightness or the tensile or other strength of materials or appliances; under what strain they are at a given time, or how their strength is affected by given imperfections, or the facts may be more complicated without losing their essential character as facts; as where the witness states the cause of observed phenomena, the dangers attendant upon the use of particular machinery, or the prosecution of certain lines of business, how injuries from these dangers can be prevented, how mechanic operations should be conducted, the physical effects of certain mechanical devices, the result of specific defects, and in general what certain appearances would (285) indicate to an observer experienced or skilled in mechanical trades. He may even state a conclusion regarding the sufficiency of mechanical devices for certain purposes." It is not necessary that we indorse all that is here said in regard to the competency of such testimony, for all of it is not applicable to this case, but so much as is, upholds the ruling of the court, and the text is supported by a full citation of the best authorities.
The case was ably presented to us by counsel for the defendant, and we have given careful attention to his argument and brief, but are unable to find any cause for a reversal.
No error. *Page 265 
 Cited: Cochran v. Mills Co., 169 N.C. 61 (1g); Lynch v. Veneer Co.,169 N.C. 172 (1f); Wooten v. Holleman, 171 N.C. 464 (1f); Gaither v.Clement, 183 N.C. 456 (1g); Medford v. Spinning Co., 188 N.C. 128 (3f);Crisp v. Thread Mills, 189 N.C. 92 (3f); Bradford v. English, 190 N.C. 745
(4g); Jefferson v. Raleigh, 194 N.C. 481 (4g); Ogle v. R. R., 195 N.C. 797
(4g); Smith v. Ritch, 196 N.C. 76 (4g); Bateman v. Brooks, 204 N.C. 183
(4g).