JACK KIENTZ v. NORTON B. CARLTON AND SEARS, ROEBUCK AND COMPANY, A CORPORATION.

(Filed 11 January, 1957.)

**1. Negligence § 1—**

Actionable negligence is the breach of a legal duty owed by defendant to plaintiff, under the relationship existing between the parties and the attendant circumstances, which proximately causes plaintiff's injury.

**2. Sales § 30—Evidence held insufficient to show that plaintiff's injuries resulted from instrument inherently dangerous by reason of absence of safety feature.**

The evidence tended to show that plaintiff, as employee of the purchaser, was using a power lawn mower with a rotary blade, that as plaintiff pushed it into tall grass, the vibration of the machine shook plaintiff's hands loose from the handle bars, that plaintiff lost his balance, slipped and fell on his back, and his left foot went under the guard and came in contact with the rotating blade. The evidence further tended to show that the guard at the back of the machine extended within two inches of the ground, and that plaintiff's foot could not have gone under the guard except for the fact that, incident to the accident, the back portion of the mower was raised several inches. *Held:* The evidence is insufficient to support a finding that the mower was inherently dangerous because of the want of certain safety features found on other power mowers and that the seller should have reasonably foreseen that injurious consequences were probable if the machine were operated by a person who was himself not at fault, and therefore nonsuit as to the seller was proper.

**3. Same—**

In the absence of express warranty, the seller can have no greater liability than the manufacturer for injuries to third persons resulting from alleged defective condition of the article sold.

**4. Negligence § 9—**

Breach of a legal duty is not sufficient predicate for liability for an injury which could not have been foreseen according to ordinary and usual experience.

**5. Sales § 30—**

A merchant of power lawn mowers is not required by law to sell only the latest models or only those having specified safety features.

**6. Master and Servant § 4a—**

Proof that plaintiff was employed by defendant to cut the grass around defendant's home with implements furnished by defendant is sufficient to support plaintiff's contention that he was an employee and not an independent contractor.

**7. Master and Servant § 14—**

The duty rests upon an employer to exercise that degree of care which a man of ordinary prudence would exercise under like circumstances, having regard to his own safety, to furnish the employee a reasonably safe place to work and reasonably safe machinery, implements and appliances with which to perform the work.

**8. Master and Servant § 15—**

In respect of implements and appliances purchased for personal use and for use by a domestic servant or other employee engaged to perform ordinary household or yard chores on the employer's residence premises, the employer cannot be held responsible solely on the ground that a particular implement or appliance was not known, approved or in general use for the purpose for which it was made and sold.

**9. Same—**

The relative knowledge and experience of the employer and employee in the use of power mowers must be considered upon the question whether the employer exercised reasonable care in providing such appliance for use by the employee, especially when there is no latent or concealed defect or hazard but only such danger as is obvious.

**10. Appeal and Error § 51—**

Admitted testimony, whether competent or incompetent, must be considered in passing on defendants' motions for nonsuit.

**11. Evidence § 45—**

In the absence of a finding or admission that a witness is an expert, the competency of his opinion testimony is to be determined by the rules applicable to testimony of nonexpert witnesses.

**12. Evidence § 49—**

Testimony of nonexpert witnesses to the effect that a certain power lawn mower was unsafe for use on embankments is not a statement of a composite fact or a shorthand statement of fact, and is incompetent.

**13. Master and Servant § 15—Evidence held insufficient to show negligence on part of employer in failing to exercise due care to furnish employee reasonably safe instrumentality.**

The evidence tended to show that plaintiff was employed to cut the grass around defendant's residence, that plaintiff was furnished a power lawn mower with rotary blade and that as plaintiff pushed it into tall grass, the

vibration of the machine shook plaintiff's hands loose from the handle bars, that plaintiff lost his balance, slipped and fell on his back, and his left foot went under the guard and came in contact with the rotating blade. There was no evidence that the employer had any knowledge or notice of defect in the mower, or that, if the mower of this particular type was not in general use, the employer had any knowledge or notice of such fact, nor evidence that at the time of the accident plaintiff was cutting grass on the slope of an embankment or evidence that the employer had knowledge or notice that the machine was unsafe or unsuitable for such purpose. *Held:* The evidence is insufficient to show negligence of the employer in failing to exercise due care to provide the employee a reasonably safe and suitable mower, and nonsuit as to the employer was properly entered.

JOHNSON, J., not sitting.

APPEAL by plaintiff from *Froneberger, J.,* January-February Regular Civil Term, 1956, of BUNCOMBE.

Civil action to recover damages for personal injuries, alleged to have been caused by the negligence of defendants.

On 9 June, 1954, plaintiff, employed to do yard work on the residence premises of defendant Carlton, was injured while operating a power lawn mower which Carlton had purchased (new) on or about 25 May, 1954, from defendant Sears, Roebuck and Company, hereinafter called Sears.

Plaintiff alleged that, at the time he was injured, this occurred: ". . . when plaintiff commenced to operate said machine on said embankment in high grass said machine commenced to violently jerk and vibrate and threw plaintiff suddenly to the ground on said embankment and caused plaintiff to fall on said embankment, which embankment was latently slippery and an unsafe place to work and caused plaintiff to be thrown under said mower causing his foot to be thrown under the skirt at the rear of said power mower and into the blade while same was rotating, . . ."

Plaintiff alleged that the mower was inherently dangerous because it was not equipped with specific safety features, alleged to be approved and in general use and which could have been provided at small expense, to wit: (1) a control at the handle bars, to enable the operator to stop the motor and rotation of the blade without going to the front of the machine; (2) a safety clutch, within reach of the operator, whereby the blade could be disconnected from the motor; (3) a guard extending from the rear of the casing to the ground; (4) a guard between the tip of the blade and the (inside) rear of the casing; and (5) that the motor should have been at the rear of the casing, rather than at the center thereof, with the blade farther to the front, thus widening the distance between the tip of the blade and the back of the machine.

The mower, identified by model number and offered in evidence, was a Craftsman 2 H.P. rotary type mower. It was "of light weight," so plaintiff alleged, weighing 47-50 pounds. The metal casing was mounted on four wheels. The motor was on top of the casing. A flat blade was under the casing. Both were connected with a shaft. The motor drove the shaft; the shaft rotated the blade; and the rotating blade cut the grass. The motor did not propel the machine. The operator had to push it, using for that purpose handle bars some three feet back of the machine.

At the front of the machine, the lower portion of the casing consisted of a small comb-like aluminum guard through which the grass passed before coming into contact with the rotating blade. At the back, towards the operator, the metal casing covered the blade completely. When the blade was parallel with the sides of the casing, the clearance between the back end of the blade and the back of the casing was approximately three inches.

The motor was started by pulling a cord or rope as in case of an outboard motor. It was stopped by pressing a metal attachment at the front of the mower, which caused a short circuit when it made contact with the spark plug.

This action was commenced on 19 August, 1954. Carlton, originally the sole defendant, answered. On 15 December, 1954, pursuant to G.S. Ch. 1, Art. 46, plaintiff was adversely examined by Carlton. On 9 May, 1955, the court, on Carlton's motion, ordered that Sears be made a party defendant.

Thereafter, by leave of court, plaintiff filed an amended complaint. He alleged therein that his injuries were caused by the concurring negligence of defendants. Defendants, answering separately, denied negligence; and each defendant pleaded affirmative defenses, including contributory negligence and assumption of risk.

At the close of plaintiff's evidence, the court granted each defendant's motion for judgment of involuntary nonsuit; and such judgments were entered. Plaintiff excepted and appealed; and, upon appeal, plaintiff assigns as error the entry of each judgment of involuntary nonsuit and the court's exclusion of certain evidence offered by plaintiff.

Additional facts necessary to an understanding of the questions presented will be stated in the opinion.

*James S. Howell and William J. Cocke for plaintiff, appellant.*

*McLean, Gudger, Elmore & Martin for defendant Carlton, appellee.*

*Harkins, Van Winkle, Walton & Buck for defendant, Sears, Roebuck & Company, appellee.*

BOBBITT, J.    The facts disclosed by the evidence impel the conclusion that the judgments of nonsuit were proper.

To recover damages for actionable negligence, plaintiff must establish (1) a legal duty, (2) a breach thereof, and (3) injury proximately caused by such breach. *Ramsbottom v. R. R.*, 138 N.C. 38, 41, 50 S.E. 448; *Petty v. Print Works*, 243 N.C. 292, 90 S.E. 2d 717.

Negligence is the basis of plaintiff's action against each defendant. Even so, the duty owed by each defendant to plaintiff is determined by the relationship subsisting between them. *Pinnix v. Toomey*, 242 N.C. 358, 87 S.E. 2d 893; *Petty v. Print Works, supra.* Hence, it becomes necessary to consider the liability of each defendant separately; but, before doing so, it seems appropriate that we consider the circumstances under which plaintiff was injured.

Plaintiff, who was employed by Carlton under circumstances narrated below, had been furnished the mower, a swinging scythe or blade and a pair of shears, all practically new and in good repair. He started the motor, pushed the mower up the driveway and reached a place referred to generally as being on an embankment. As he pushed the mower into tall grass, six to eight inches high, he felt the handle bars vibrate and noticed that the motor was slowing down. He testified: "As I pushed the mower forward I thought that this shaking that it was doing would gradually clear up and I kept pushing further and further in hopes that it would before I fell." Again: "As I pushed the mower into the grass it kept getting a little worse and it threw me." The gist of his testimony is that the vibration of the handle bars shook his hands loose; that he lost his balance; that he slipped and fell on his back, his feet flying forward; and that the mower went forward "a little ways" ahead of him and the back came up three or four inches. Under these circumstances, his left foot went under the raised back portion of the mower and came in contact with the rotating blade.

Plaintiff testified that he didn't know what made the back end rise up. For his foot to reach the blade, it was necessary that it extend at least three inches under and beyond the casing. He testified: "Not as long as I held on to it was there any chance for the machine to go up and do anything. If I had stood and held it the blades could never have been exposed at all. If I had stood still and held it or walked away from it or anything else there is no way in the world I could have gotten my foot under there. There is a guard there right down within two inches of the back of that machine that would have kept this foot out of it unless something did make it turn over."

After his left foot was cut by the blade, plaintiff didn't recall anything that happened except that an unidentified person came up, used his belt as a tourniquet to stop the flow of blood; and then plaintiff was taken to the hospital. There was no evidence as to the exact place

where plaintiff fell or as to the position of the mower after plaintiff had fallen.

*As to Sears,* the evidence most favorable to plaintiff, set forth in some detail below, tends to show that this mower was not constructed or equipped with specified safety features; that it was not approved and in general use for mowing on embankments; and that there were other power mowers, approved and in general use for mowing on embankments, having one or more of said specified safety features. By reason of this deficiency, so plaintiff alleges and contends, this mower was an inherently dangerous instrumentality. The alleged negligence of Sears, in substance, is that it offered for sale and sold such a mower, with knowledge or notice of its said condition. Plaintiff bases his right to recover on legal principles discussed, although not the basis of decision, in *Gas Co. v. Montgomery Ward & Co.,* 231 N.C. 270, 56 S.E. 2d 689. Incidentally, it is noted that the cited case, and also *Dalrymple v. Sinkoe,* 230 N.C. 453, 53 S.E. 2d 437, relate to gas water heaters; and in each case the alleged liability of the vendor was predicated upon alleged negligence in representing to the purchaser that it was safe to use liquid gas in the operation of such heater.

The evidence discloses that both the construction and operation of the mower were simple, readily observed and understood upon casual inspection. There is no evidence of defective materials or workmanship in its construction or that it was in disrepair or otherwise out of order. It was in fact what it purported to be, a comparatively small, light weight, power mower. There was no evidence that it was not suitable for use in mowing ordinary lawns. As to Sears, there was no evidence that it was intended to be used for any other purpose.

In our opinion the evidence is insufficient to support a finding that this mower was an inherently dangerous instrumentality and that Sears should have reasonably foreseen that injurious consequences were probable if operated by a person who was not himself at fault. Annotations: "Liability of seller of article not inherently dangerous to third person for injury or death due to dangerous condition of article sold." 42 A.L.R. 1243; 60 A.L.R. 371.

The absence of the several alleged safety features was obvious, not latent. Injury alleged to have occurred because of the absence of a guard or stopping device on an "onion topping" machine was involved in *Campo v. Scofield,* 301 N.Y. 468, 95 N.E. 2d 802. The basis of decision, supported by the authorities cited, is epitomized in these excerpts from the opinion of *Judge Fuld:* "The cases establish that the manufacturer of a machine or any other article, dangerous because of the way in which it functions, and patently so, owes to those who use it a duty merely to make it free from latent defects and concealed dangers." Again: ". . . since the duty owed by a manufacturer to remote users

does not require him to guard against hazards apparent to the casual observer or to protect against injuries resulting from the user's own patently careless and improvident conduct, the complaint was properly dismissed." *Campo v. Scofield, supra,* is discussed with approval in 15 Albany Law Review 196. Absent an express warranty, certainly no greater duty would rest upon the seller than upon the manufacturer of such a machine. While the recent case of *Driver v. Snow, ante,* 223, 95 S.E. 2d 519, was based on alleged implied warranty, the principles as stated by *Higgins, J.,* would seem equally applicable when a remote user grounds his alleged action for negligence upon defects discoverable upon ordinary examination.

Even if there were a breach of legal duty, this would impose "responsibility for consequences which are probable, and which could reasonably have been foreseen, according to ordinary and usual experience, but not for consequences which are merely possible according to occasional experience." *Brady v. R. R.,* 222 N.C. 367, 373, 23 S.E. 2d 334. It is noteworthy that the evidence fails to disclose any incident, apart from that of plaintiff's injury, where the operator of a machine similarly constructed and equipped was injured under the same or similar circumstances or for that matter under any circumstances.

It is common knowledge that the various models of power mowers differ in size, weight, design, safety devices, etc., and that new models constantly come into the market, and that purchasers select according to their choice and the price of the respective models. No law of which we are aware requires that a merchant sell only the latest models or those having specified safety features. *Pontifex v. Sears, Roebuck & Company,* 226 F. 2d 909.

*As to Carlton,* the evidence was sufficient to support the allegation that plaintiff was Carlton's employee, not an independent contractor. *Hayes v. Elon College,* 224 N.C. 11, 29 S.E. 2d 137; *Hinkle v. Lexington,* 239 N.C. 105, 79 S.E. 2d 220; *Bell v. Sawyer,* 313 Mass. 250, 47 N.E. 2d 1.

The oft-stated rules of the common law are summarized by *Winborne, J.* (now *C. J.*), in *Baker v. R. R.,* 232 N.C. 523, 61 S.E. 2d 621, as follows:

"When such relationship exists, the accepted and well settled rule of law is that the master owes to the servant the duty to exercise ordinary care to provide a reasonably safe place in which to do his work and reasonably safe machinery, implements and appliances with which to work. The master is not an insurer, however. Nor is it the absolute duty of the master to provide a reasonably safe place for the servant to work, or to furnish reasonably safe machinery, implements and appliances with which to work. He meets the requirements of the law in the discharge of his duty if he exercises or uses ordinary care to provide for

the servant such a place, or to furnish such machinery, implements and appliances as are approved and in general use in places of like kind, that is, *that degree of care which a man of ordinary prudence would exercise or use under like circumstances, having regard to his own safety, if he were providing for himself a place to work, or if he were furnishing for himself machinery, implements and appliances with which to work.* This rule of conduct of 'the ordinarily prudent man' measures accurately the duty of the master and fixes the limit of his responsibility to his servant. (Citations omitted.)" (Italics added.)

The alleged failure of Carlton to exercise due care to provide plaintiff a reasonably safe place in which to work may be put aside as irrelevant. Manifestly, when plaintiff undertook to mow the grass on Carlton's premises he had to work where the grass was growing.

It is noteworthy that the above-stated common law rules were formulated when the subsisting relationship was described as that of master and servant rather than that of employer and employee. Our decisions deal principally with persons employed on railroads, in manufacturing plants and like establishments; and underlying these rules as so formulated are these premises, (1) the superior knowledge of the employer, and (2) the dependent status of the employee. The basic rule relevant is that the employer must exercise reasonable care to furnish his employee reasonably safe machinery, implements and appliances with which to do his work. As pointed out by *Hoke, J.* (later *C. J.*), in *Kiger v. Scales Co.,* 162 N.C. 133, 78 S.E. 76: "And as a feature of this obligation *in the operation of mills and other plants* where the machinery is more or less complicated, *such employers* are held to the duty of supplying machinery and implements which are known, approved, and in general use. (Citations omitted.)" (Italics added.) *Ainsley v. Lumber Co.,* 165 N.C. 122, 81 S.E. 4. It is noted that consideration and application of these common law rules have been infrequent since the adoption of the Workmen's Compensation Act (1929).

Where one is engaged in a transportation, manufacturing or other business or industrial enterprise, it is reasonable that the law should impose upon him the legal duty to provide such machinery, implements and appliances as are known, approved and in general use. *Helms v. Waste Co.,* 151 N.C. 370, 66 S.E. 312, and cases cited. But, in respect of implements and appliances purchased for personal use and for use by a domestic servant or other employee engaged to perform ordinary household or yard chores on the employer's residence premises, experience and reason dictate that it would be unreasonable to charge such an employer *as a matter of law* with knowledge or notice as to which of the various implements and appliances placed on the market from time to time are deemed known, approved and in general use as of a particular date by persons well informed in such matters. Conse-

quently, we adopt the rule that such employer cannot be held responsible *solely* on the ground that a particular implement or appliance was not known, approved and in general use for the purpose for which it was made and sold. In the absence of evidence that such employer had knowledge or notice of some defect therein or of probable danger in the ordinary use thereof, when such employer provides a new appliance, purchased from a reputable dealer, ostensibly safe and suitable for the purpose for which it was made and sold, it cannot be said that he failed to exercise due care to provide a reasonably safe and suitable appliance.

The ultimate test of Carlton's liability is this: Did he fail to exercise reasonable care, under the circumstances disclosed, to provide a reasonably safe and suitable mowing machine for plaintiff's use; and, if so, did his negligence in this respect proximately cause plaintiff's injury?

Notwithstanding their widespread use, we would not say that a power mower falls within the category of a simple tool. Yet when it appears that the employee's knowledge of power mowers is equal or superior to that of the employer, this is a significant fact in determining whether the employer was negligent in providing it for the employee's use. Compare: *Petty v. Print Works, supra.*

As stated by *Connor, J.*, in *Covington v. Furniture Co.*, 138 N.C. 374, 50 S.E. 761: "The general rule of law is that when the danger is obvious, and is of such a nature that it can be appreciated and understood by the servant as well as by the master or by anyone else, and when the servant has as good an opportunity as the master or anyone else of seeing what the danger is, and is permitted to do his work in his own way and can avoid the danger by the exercise of reasonable care, the servant cannot recover against the master for the injuries received in consequence of the conditions of things which constituted the danger. If the servant is injured, it is from his own want of care. This rule is especially applicable when the danger does not arise from the defective condition of the permanent ways, works or machinery of the master, but from the manner in which they are used, and when the existence of the danger could not be well anticipated, but must be ascertained by observation at the time." *Warwick v. Ginning Co.*, 153 N.C. 262, 69 S.E. 129.

With reference to an appliance, *e.g.*, a power mower, whether such employer exercises reasonable care in providing such appliance for use by a particular employee will depend, at least in part, upon their relative knowledge and experience in the use of power mowers. 56 C.J.S. Master and Servant, sec. 203; 35 Am. Jur. Master and Servant, sec. 128. This is especially true when as here there is no latent or concealed defect or hazard but only such danger as is obvious, that is, from having hands or feet injured if they get *under* the casing and in contact with

the rotating blade. "A failure to warn him of what he already knows is without significance." *Petty v. Print Works, supra.*

In the light of these principles, we consider the evidence relative to plaintiff's employment by Carlton.

Plaintiff's regular work was that of a service station attendant. Carlton was accustomed to have his car serviced at this station. In a conversation on Tuesday, 8 June, Carlton remarked to plaintiff that he could not find anybody to cut his grass. Thereupon, plaintiff told Carlton that he had "done that type of work"—that he had "used power mowers"—and volunteered to do the job; and, as agreed, plaintiff reported for work about 8 a.m. on Wednesday, 9 June, plaintiff's day off from his service station job.

After plaintiff arrived Carlton went to a hardware store and procured a new swinging scythe or blade. Carlton told plaintiff how to start the motor, a procedure already familiar to plaintiff. Carlton said nothing more as to the operation of the mower and plaintiff made no inquiries or requests for instructions. The motor was not actually started until after Mr. and Mrs. Carlton had left for town, leaving plaintiff alone on the Carlton premises.

Plaintiff's testimony was that Carlton's instructions to him were as follows: ". . . to mow the grass and trim the shrubbery around his home"; "to take this power mower and mow the lawn where it needed it"; and, "Mr. Carlton had already had his lawn mowed around his home. He had an embankment that the lawn hadn't been mowed. He instructed me to take this power mower and mow that embankment."

Plaintiff was then 28 years of age and in good health. He had no physical defects as to eyes, feet, hands, or otherwise. The testimony as to his weight varied from 170 to 205 pounds.

When the Carltons left, plaintiff brought the mower out of the garage and started it. Plaintiff testified: "In my opinion, it was operating all right and sufficient for me to mow the lawn with." Plaintiff was unable to describe the Carlton premises. His evidence is not clear as to the route he took before he reached the place where he began to push the mower into the tall grass.

There is no testimony to the effect that the mower, pushed by plaintiff, struck any object, tree, shrub, rock, etc., causing it to bounce back towards plaintiff. On the contrary, when he lost his grip on the handle bars and fell the mower moved "a little ways" forward.

Plaintiff's allegations and evidence refer to the site of plaintiff's injury as being on an embankment. There is no evidence as to the extent or slope of such embankment, nor is there evidence as to the extent or character of the ground at the top of such embankment. As stated above, plaintiff's testimony was that, after reaching the area described as the top of the embankment, he pushed the mower out into

the tall grass. The exact site of plaintiff's unfortunate accident rests wholly in the realm of conjecture. But this fact should be noted: There is neither allegation nor evidence that plaintiff, as he pushed the vibrating machine into the tall grass, was proceeding over the crest of an embankment or down such embankment.

Plaintiff undertook to show the deficiencies in this mower by two witnesses, Tinney and Brown. Tinney had seen it before the trial. Brown's first observation of it was made at the trial. Their testimony does not indicate that they were familiar with Carlton's premises. When they refer to banks or embankments, the reference is general.

Admitted testimony, whether competent or incompetent, must be considered in passing on defendants' motions for nonsuit. *S. v. McMilliam*, 243 N.C. 771, 92 S.E. 2d 202; *Early v. Eley*, 243 N.C. 695, 91 S.E. 2d 919. Such admitted testimony was in substance as follows:

Tinney testified that "this machine was not in common, general and approved use *by employers* in Buncombe County, North Carolina, in June, 1954, for the mowing of high grass on embankments." (Italics added.) The widespread use of power mowers by the owners in doing their own yard work is a matter of common knowledge. It is unrealistic to say that a particular model is not known, approved and in general use by owners who regularly or occasionally provide such machine for use by a person employed for the job. Inherent in the concept of due care to provide reasonably safe and suitable appliances for the employee's safety is that the employer must exercise the care of an ordinarily prudent person for his own safety if working on the same job with the same appliances.

Also, Tinney testified to certain obvious facts, viz.: All four wheels were of the same size. At the back, there was no guard other than the rear of the casing. There was no clutch whereby the blade could be disengaged without stopping the motor. There was no throttle at the handle bars by which the operator could regulate the speed of the motor.

Brown testified, over objection, that in his opinion this mower was unsafe for use on embankments. This (opinion) generalization is not directed to the absence of any specified safety features or related to the proximate cause of the plaintiff's injury.

Much of Tinney's testimony was excluded. Such excluded testimony, given in the absence of the jury, was in substance as follows: The construction of this mower made it unsafe "for hazardous land," such as a bank, because the wheels were all the same size and the motor was atop the center of the casing. "When you are cutting on a bank you have a crest, and in cutting on that bank you are bound to hit the crest, your wheels will overlap, thus causing your blade to drop down and dig into the dirt." In addition, the location of the motor was such that "this mower has a tendency in going down a bank to tip or topple," its

weight being to the front at such time. The evidence is insufficient to show that plaintiff was pushing the machine over "the crest" or "down a bank." Nor is there evidence sufficient to show that this mower tipped or toppled because its wheels were of the same size or the motor was atop the center of the casing.

Further excluded testimony of Tinney included the following: In June, 1954, there were in general and approved use other power motors constructed or equipped with these safety features:

1. A mower so constructed that the motor was atop the back portion of the casing, the rotating blade being under the front portion of the casing; and that a patent for a machine so constructed had been granted by the Patent Office on 17 November, 1953. Incidentally, in three of the four cases involving power mowers that have come to our attention the injury was sustained at or near the front, not the back, of the machine. *Pontifex v. Sears, Roebuck & Company, supra; Marks v. Goldstein,* Ky., 266 S.W. 2d 104; *Wilson v. White,* Springfield (Mo.) Court of Appeals, 272 S.W. 2d 1.

2. A power mower having an "arcuated guard" installed under the casing between the skirt and tip of the blade.

3. A guard or apron on the back of the casing, extending "lower to the ground than the skirt on this mower . . ."

In the absence of a finding or admission that the witness is an expert, the competency of excluded opinion evidence must be considered in relation to the rules applicable to the testimony of nonexpert witnesses. *Lumber Co. v. R. R.,* 151 N.C. 217, 220, 65 S.E. 920; *Boney v. R. R.,* 155 N.C. 95, 105, 71 S.E. 87. Here neither Tinney nor Brown was tendered as an expert.

The admitted opinion testimony of Brown, and the excluded opinion testimony of Tinney, to the effect that this machine was unsafe for use on embankments, was incompetent under the rule stated in the oft-cited case of *Marks v. Cotton Mills,* 135 N.C. 287, 47 S.E. 432. Also: *Wilson v. Lumber Co.,* 186 N.C. 56, 118 S.E. 797; *Trust Co. v. Store Co.,* 193 N.C. 122, 136 S.E. 289; and many others. The exception to the rule is explained by *Allen, J.,* in *Marshall v. Telephone Co.,* 181 N.C. 292, 106 S.E. 818. Suffice to say, this testimony cannot be considered a "shorthand statement of fact" or a statement of a "composite or compound fact," that is, testimony based on observation of appearances, facts and conditions that could not be reproduced to the jury.

Incidentally, there was no testimony as to the existence or use of any power mower with wheels of one size at the front and of a different size at the back.

When we consider the liability of Carlton, we are confronted with these facts. He purchased the mower from Sears, a reputable dealer, on or about 25 May, 1954. Whether he had personally used this mower

or any power mower does not appear.  He had no knowledge or notice of any defect therein.  In fact, there was no defect.  If this mower was not approved and in general use for the mowing of grass on level ground or on embankments, there is no evidence that Carlton had knowledge or notice of such fact.  There is nothing in the evidence to suggest that the use of this mower by Carlton himself would have constituted a failure on his part to exercise due care for his own safety.  There is less reason that Carlton should have reasonably anticipated that a mature man, of plaintiff's physique and declared previous experience in the use of power mowers, would have so operated it as to lose control, fall, upraise the casing, and by this combination of circumstances get his foot under the casing.  Reasonable foreseeability is a requisite element of proximate cause.  *Aldridge v. Hasty,* 240 N.C. 353, 82 S.E. 2d 331.  "Reasonable apprehension does not include anticipation of every conceivable danger, nor does the duty to exercise care impose obligation to guard against dangers which are remote and improbable." *Muldrow v. Weinstein,* 234 N.C. 587, 68 S.E. 2d 249.  Omniscience is not required.  *Henderson v. Henderson,* 239 N.C. 487, 80 S.E. 2d 383.

The words, "Keep hands and feet from under mower," appeared on the machine.  This warning would seem unnecessary, for this was an obvious danger.  *Marks v. Goldstein, supra.*  While plaintiff had ample opportunity to make a complete inspection of the machine, he testified that he did not examine the machine sufficiently to notice these words or to notice the way in which the mower was constructed.  Apparently, he relied wholly on his prior experience in the use of power mowers.  Carlton left the machine and other tools with plaintiff, plaintiff to do the work in his own way.  It would appear that the new swinging blade, purchased that very morning, was for plaintiff's use in cutting over the grass in places where it was too tall for the mower.

While we are not disposed to stress the point, we cannot overlook the fact that the plaintiff alleged that Sears warranted and represented that this mower "cut perfectly on regular lawns and in addition cut weeds and grass of any height and was for use on banks and terraces," and that it was "for sale particularly to possessors of homes for cutting grass on lawns, terraces and embankments."  These allegations were admitted by Carlton, denied by Sears.  Suffice to say, there is no evidence that Carlton had knowledge or notice that it was unsafe or unsuitable for such purposes.

Under the circumstances disclosed, we hold that the evidence, both that admitted and that excluded, was insufficient to support a jury finding that Carlton was negligent in providing this mower, along with other tools, for plaintiff's use on this job.

This significant fact must be kept in mind.  *The blade was completely covered by the casing.*  To reach it, plaintiff had to get his foot

*under* the casing; and his foot had to extend *under* the casing at least three inches. Indeed, it appears from plaintiff's testimony, quoted above, that the rear of the casing was a sufficient guard to keep the operator's foot from going under the mower unless it turned over or the back end was raised. It is unlike *Marko v. Sears, Roebuck & Co.,* 24 N. J. Super. 295, 94 A. 2d 348, where the machine struck a rock and bounced back and cut the operator's foot. In that case, the plaintiff (purchaser) "saw there was an opening in the back and the blade was open and exposed at this point." It is noted that the decision there was that the evidence was sufficient to make out a *prima facie* case for breach of express warranty, but that the case was properly dismissed as to the negligence count.

In view of the decision reached, it is unnecessary to consider the serious questions as to the alleged contributory negligence of and assumption of risk by plaintiff. Suffice to say, it seems clear that, as between plaintiff and Carlton, plaintiff had equal, if not greater opportunity, to anticipate such danger as resulted from his handling of the machine in the manner described in his testimony.

Plaintiff lost his grip, fell and his foot went *under* the *upraised* casing. It would seem pure speculation as to whether the injury would have occurred if this machine had been equipped with any of the guards or other features described by Tinney as in general and approved use on other power mowers. *Crisp v. Lumber Co.,* 199 N.C. 343, 154 S.E. 311; *Miller v. Mfg. Co.,* 202 N.C. 254, 162 S.E. 925, and cases cited.

Although impracticable to discuss all of plaintiff's assignments of error as to evidence rulings in detail, each has been carefully considered; and the result reached is that the judgments of nonsuit entered by the court below must be and they are

Affirmed.

. JOHNSON, J., not sitting.